# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AMERICAN CIVIL LIBERTIES UNION OF
MICHIGAN, on behalf of its members,

        Plaintiff,

vs.   Hon.

TRINITY HEALTH CORPORATION, an   Case No.
Indiana corporation, and TRINITY HEALTH –
MICHIGAN CORPORATION, a Michigan
corporation,

        Defendants.
_____/

Brooke A. Merriweather-Tucker (P79136)
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P48085)
Kary L. Moss (P49759)
American Civil Liberties Union
  Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6823
btucker@aclumich.org
dkorobkin@aclumich.org
msteinberg@aclumich.org

Alexa Kolbi-Molinas
Brigitte Amiri
Jennifer Dalven
American Civil Liberties Union Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2633
akolbi-molinas@aclu.org
bamiri@aclu.org
jdalven@aclu.org

*Attorneys for Plaintiffs*

## COMPLAINT

## INTRODUCTORY STATEMENT

1. This case concerns Trinity Health and Trinity Health – Michigan's (collectively, "Trinity Health") policy and practice of denying appropriate emergency care to women suffering pregnancy complications, including miscarriages, in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

2. Trinity Health, which owns and operates at least 10 hospitals in the state of Michigan, requires that all of its hospitals abide by the Ethical and Religious Directives for Catholic Health Care Services (the "Directives").

3. The Directives, written and promulgated by the United States Conference of Catholic Bishops ("USCCB"), prohibit Catholic hospitals from terminating the pregnancy of a woman suffering a pregnancy complication, even if such care is urgently needed to protect a woman's health or life. Indeed, the Directives prohibit Catholic hospitals from performing a life- or health- saving abortion even if the fetus is not yet viable and even when the failure to do so subjects the woman to serious harm or death.

4. Because of these policies, hospitals within the Trinity Health system have repeatedly and systematically failed to provide women suffering pregnancy complications or miscarriage – including at least one of Plaintiff's members – with care required by EMTALA.

5. Plaintiff therefore brings this action on behalf of its members against Trinity Health to ensure that they are not subject to harm as a result of Trinity Health's refusal to comply with federal law.

## PARTIES

6. Plaintiff American Civil Liberties Union of Michigan ("Michigan ACLU") is a nonprofit organization that engages in litigation, public education and lobbying about civil rights

and civil liberties in the state of Michigan, including women's health and reproductive rights. Members of the Michigan ACLU support its mission to ensure that all individuals are equally protected by the nation's Constitution and laws. The Michigan ACLU is extensively involved in a variety of projects related to promoting gender equality and access to reproductive rights, and to ensuring that religious exemptions to generally applicable laws are not used to harm third parties. The Michigan ACLU, and the Michigan ACLU Fund's women's rights coalition, has over 8,500 members, including women who are currently pregnant, women who have been pregnant in the past and women who will become pregnant in the future; and who reside in cities or counties where: 1) a Trinity Health hospital is the only emergency room option; 2) an ambulance will take them to a Trinity Health hospital if they have an emergency medical condition; or 3) a Trinity Health hospital is the only hospital that takes the member's insurance. At least one such Michigan ACLU member has already been harmed because a Trinity Health hospital refused, in accordance with the policy at issue in this case, to provide her stabilizing treatment, in violation of EMTALA. The Michigan ACLU is headquartered at 2966 Woodward Avenue, Detroit, MI 48201.

7. Defendant Trinity Health Corporation owns and operates hospitals in 21 states, including at least 10 hospitals with emergency rooms within the state of Michigan. Trinity Health Corporation requires each hospital that it owns and operates to adhere to its policy that prohibits any staff member from performing an abortion even when required to provide stabilizing treatment to a woman with an emergency medical condition.

8. Defendant Trinity Health – Michigan Corporation does business as several hospitals in the state of Michigan, including at least 10 hospitals with an emergency room. Each of these hospitals adheres to a policy that prohibits any staff member from performing an abortion even

when necessary to provide stabilizing treatment to a woman with an emergency medical condition.

9. Pursuant to 28 U.S.C. § 1332(c), both Trinity Health Corporation and Trinity Health – Michigan Corporation are citizens of the State of Michigan.

10. Trinity Health Corporation is incorporated in Indiana and has its headquarters and principal place of business in Livonia, Michigan, which is located in the Eastern District.

11. Trinity Health – Michigan Corporation is incorporated in Michigan and has its headquarters and principal place of business in Livonia, Michigan, which is located in the Eastern District.

## JURISDICTION AND VENUE

12. This is an action for declaratory and permanent injunctive relief to enforce the rights of Plaintiff's members under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C §1395dd.

13. This Court has jurisdiction over Plaintiff's federal law claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

14. Because both Defendants reside within the Eastern District of Michigan, venue is proper under 28 U.S.C. § 1391(b)(1).

## STATUTORY FRAMEWORK

15. EMTALA states, *inter alia*, that any hospital that receives Medicare funds and operates an emergency department:

> i. Must stabilize any individual determined to have an emergency medical condition. *See* 42 U.S.C.§ 1395dd(b); and
>
> ii. May not transfer (which includes discharge) any individual with an emergency medical condition who has not been stabilized, unless, *inter alia*, the individual requests a transfer or a physician certifies that the

      benefits of a transfer to another medical facility outweigh the increased risks to the patient. *See id.* at § 1395dd(c).

16. EMTALA defines an emergency medical condition as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in placing the health of the individual . . . in serious jeopardy, [cause] serious impairment to bodily functions, or serious dysfunction of any bodily organ or part. *Id*. § 1395dd(e)(1).

17. EMTALA defines "to stabilize" to mean "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility." *Id.* at § 1395dd(e)(3)(A).

18. Defendants are participating hospitals under EMTALA.

**THE DIRECTIVES AND DEFENDANTS' FAILURE TO COMPLY WITH EMTALA**

19. According to its website, Defendant Trinity Health Corporation owns and operates 86 hospitals in 21 states, including at least 10 hospitals with emergency rooms in the state of Michigan, and is "one of the largest multi-institutional Catholic health care delivery systems in the nation."

20. Defendant Trinity Health – Michigan Corporation owns, operates, and does business as, at least 10 hospitals with emergency departments throughout Michigan.

21. Defendants require that its hospitals adhere to a document called the Directives, which are written by USCCB.

22. The Directives proscribe Catholic hospitals from, *inter alia*, performing certain medical procedures, even when those procedures are the prevailing standard of care.

5

23. For example, Directive 45 states: "Abortion (that is, the directly intended termination of pregnancy before viability or the directly intended destruction of a viable fetus) is never permitted. Every procedure whose sole immediate effect is the termination of pregnancy before viability is an abortion, which, in its moral context, includes the interval between conception and implantation of the embryo. Catholic health care institutions are not to provide abortion services, even based upon the principle of material cooperation. In this context, Catholic health care institutions need to be concerned about the danger of scandal in any association with abortion providers."

24. Directive 45 prohibits Catholic hospitals from performing an abortion even in circumstances where the abortion is the accepted medical standard of care to protect a patient's health or life.

25. Directive 45 prohibits the performing of an abortion prior to viability, even if pregnancy loss – and the death of the fetus – is inevitable.

26. There are a number of conditions that can arise during, or that can be exacerbated by, pregnancy "where the absence of immediate medical attention could reasonably be expected to result in placing the individual . . . in serious jeopardy, [or cause] serious impairment to bodily functions, or serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1).

27. For some women, the "immediate medical attention" required to stabilize the patient within the meaning of EMTALA is termination of the pregnancy.

28. For example, a pregnant woman may experience one of a number of types of pregnancy loss prior to the time the embryo or fetus becomes viable. In some such cases, pregnancy loss may result in significant blood loss and/or serious infection. In such cases, the standard of care requires prompt evacuation of the uterus thereby terminating the pregnancy.

29. This treatment is barred by Directive 45.

30. In addition, a number of underlying health conditions, including, for example, certain types of diabetes, heart disease, and kidney disease, can be exacerbated by pregnancy. In such circumstances, a woman may experience an emergency medical condition that requires stabilizing treatment involving pregnancy termination to protect her health or life.

31. This treatment is barred by Directive 45.

32. Defendants prohibit its hospitals and staff from terminating a woman's pregnancy in these or any other circumstances even if pregnancy loss is inevitable and/or the fetus is not viable.

33. By prohibiting its hospitals and staff from terminating a pregnancy in these or any other circumstances, Defendants have denied stabilizing treatment to multiple pregnant women experiencing an emergency medical condition, as defined by EMTALA, solely because that treatment conflicted with the Directives.

34. At least one of Plaintiff's members has already been denied stabilizing treatment (termination of the pregnancy) at one of Defendants' hospitals, in violation of EMTALA, solely because that treatment conflicted with the Directives.

35. In 2012- 2013, a public health educator discovered that at one of Defendants' hospitals alone, at least five women who were suffering from preterm premature rupture of membranes were denied appropriate stabilizing care, namely the termination of the pregnancy. Defendants' refusal to provide appropriate treatment resulted in these women becoming septic, hemorrhaging, contracting life-threatening infections, and/or unnecessarily suffering severe pain for several days.

36. This public health educator was subsequently informed by a hospital official that Defendants' actions were based on the hospital's compliance with the Directives.

37. Members of the Michigan ACLU are currently pregnant and will become pregnant in the future, and live or work in a city where either the only emergency room is at one of Defendants' hospitals, an ambulance will take them to one of Defendants' hospitals if they have an emergency medical condition, and/or where one of Defendants' hospitals is the only hospital that takes the member's insurance.

38. As a result of Defendants' policy, any and all of Plaintiff's members who are pregnant and who will become pregnant in the future – and who live or work in a city where either the only emergency room is at one of Defendants' hospitals, an ambulance will take them to one of Defendants' hospitals if they have an emergency medical condition, and/or where one of Defendants' hospitals is the only hospital that takes the member's insurance – risk being denied appropriate stabilizing care in the event of a pregnancy-related emergency medical condition, in violation of EMTALA and to the detriment of their life and health.

39. At least one of Plaintiff's members fears that because of Defendants' repeated violations of EMTALA, she will be unable to obtain treatment from Defendants for a pregnancy – related emergency medical condition and suffers mental anguish and distress as a result.

## DECLARATORY RELIEF

40. The allegations contained in the preceding paragraphs are adopted by reference.

41. An actual and immediate controversy exists between Plaintiff and Defendants. Plaintiff is entitled to a declaration of rights with respect to this controversy. Without such a declaration, Defendants' policy threatens Plaintiff's members with the deprivation of their rights under the law and puts their health and/or life at risk.

## COUNT ONE

### Violation of 42 U.S.C. §1395dd, et seq.
### Emergency Medical Treatment and Active Labor Act (EMTALA)
### (Declaratory and Injunctive Relief)

42. The allegations contained in the preceding paragraphs are adopted by reference.

43. As a result of Defendants' policy, Defendants have, and will continue to, systematically violate EMTALA by refusing to provide pregnant women suffering emergency medical conditions with stabilizing treatment in accordance with the standard of care, thereby causing harm to pregnant women, including Plaintiff's members.

44. Defendants' policy threatens Plaintiff's members with real, immediate, and substantial harm by placing barriers on their ability to obtain stabilizing treatment for pregnancy – related emergency medical conditions from Defendants.

45. Plaintiff therefore seeks a declaratory judgment that Defendants must provide appropriate stabilizing treatment for pregnant women with emergency medical conditions within the meaning of EMTALA, including terminating the pregnancy where such treatment is the standard of care, and an order preventing Defendants from continuing to violate EMTALA with respect to Plaintiff's members with pregnancy –related emergency medical conditons who require stabilizing treatment that includes care prohibited by Defendants' hospital policy.

## REQUEST FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

a. Assert jurisdiction over this matter;

b. Issue a Declaratory Judgment in favor of Plaintiff declaring that:

   Defendants must provide appropriate stabilizing treatment for pregnant women with emergency medical conditions within the meaning of EMTALA, including terminating the pregnancy, where such treatment is the standard of care.

    c. Issue a Permanent Injunction that bars Defendants from further withholding appropriate stabilizing treatment from Plaintiff's members with pregnancy – related emergency medical conditions within the meaning of EMTALA, including termination of pregnancy, where such treatment is the standard of care;

    d. Award Plaintiff the costs of this action, including reasonable attorneys' fees where available, and;

    e. Award such other relief as the Court deems just and appropriate.

Respectfully submitted,

| | |
|---|---|
| /s/ Brooke A. Merriweather-Tucker | /s/ Alexa Kolbi-Molinas |
| Brooke A. Merriweather-Tucker (P79136) | Alexa Kolbi-Molinas |
| Daniel S. Korobkin (P72842) | Brigitte Amiri |
| Michael J. Steinberg (P48085) | Jennifer Dalven |
| Kary L. Moss (P49759) | American Civil Liberties Union Foundation |
| American Civil Liberties Union Fund of Michigan | 125 Broad Street, 18th Floor |
| | New York, NY 10004 |
| 2966 Woodward Ave. | Telephone: (212) 549-2633 |
| Detroit, MI 48201 | akolbi-molinas@aclu.org |
| (313) 578-6823 | bamiri@aclu.org |
| btucker@aclumich.org | jdalven@aclu.org |
| dkorobkin@aclumich.org | |
| msteinberg@aclumich.org | |

Attorneys for Plaintiff

Dated: July 23, 2015