**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

AMERICAN CIVIL LIBERTIES UNION,
on behalf of its members, and AMERICAN
CIVIL LIBERTIES UNION of MICHIGAN,
on behalf of its members,

                                                            Hon. Gershwin A. Drain

                              Plaintiffs,

vs.                                                         Case No. 15-cv-12611

TRINITY HEALTH CORPORATION, an
Indiana corporation, and TRINITY
HEALTH – MICHIGAN, a Michigan
corporation,

                              Defendants.

_____/

Brooke A. Merriweather-Tucker (P79136)      Alexa Kolbi-Molinas
Daniel S. Korobkin (P72842)                 Brigitte Amiri
Michael J. Steinberg (P48085)               Jennifer Dalven
Kary L. Moss (P49759)                        Alyson Zureick*
American Civil Liberties Union              American Civil Liberties Union
  Fund of Michigan                            Foundation
2966 Woodward Ave.                          125 Broad St., 18th Floor
Detroit, MI 48201                           New York, NY 10004
(313) 578-6823                              (212) 549-2633
btucker@aclumich.org                        akolbi-molinas@aclu.org
dkorobkin@aclumich.org                      bamiri@aclu.org
msteinberg@aclumich.org                     jdalven@aclu.org
                                            azureick@aclu.org

Jennifer B. Salvatore (P66640)
Cooperating Attorney, American Civil        *Attorneys for Plaintiff American*
  Liberties Union Fund of Michigan          *Civil Liberties Union*
Nacht, Roumel & Salvatore, PC
101 North Main Street, Suite 555            * *admission pending*
Ann Arbor, MI 48104
(734) 663-7550
jsalvatore@nachtlaw.com

*Attorneys for Plaintiff American Civil*
*Liberties Union of Michigan*

**AMENDED COMPLAINT**

## INTRODUCTORY STATEMENT

1.     This case concerns Trinity Health and Trinity Health – Michigan's (collectively, "Trinity Health") policy and practice of denying appropriate emergency care to women suffering pregnancy complications, including miscarriages, in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and the Rehabilitation Act, 29 U.S.C. § 794.

2.     Trinity Health, which owns and operates over eighty hospitals across the country, including at least ten hospitals in the state of Michigan, requires that all of its hospitals abide by the Ethical and Religious Directives for Catholic Health Care Services (the "Directives").

3.     The Directives, written and promulgated by the United States Conference of Catholic Bishops ("USCCB"), prohibit Catholic hospitals from terminating the pregnancy of a woman suffering a pregnancy complication, even if such care is urgently needed to protect a woman's health or life.

4.     Because of these policies, hospitals within the Trinity Health system have repeatedly and systematically failed to provide women suffering pregnancy complications— including at least one of Plaintiffs' members—with the emergency care required by EMTALA and the Rehabilitation Act.  In fact, in the span of one year, a public health educator found that at just one of Defendants' hospitals alone, several women suffering pregnancy complications were denied the care they needed and to which they were entitled under federal law.

5.     As a result, pregnant women seeking emergency care at Defendants' hospitals— including at least one of Plaintiffs' members—have become septic, experienced hemorrhaging, contracted life-threatening infections, and/or unnecessarily suffered severe pain for several days at a time.

6.     Plaintiffs therefore bring this action on behalf of their members against Trinity Health to ensure that they are not subject to harm as a result of Trinity Health's refusal to comply with federal law.

## PARTIES

7.     Plaintiff American Civil Liberties Union ("ACLU") is a nationwide non-profit, non-partisan organization with more than 500,000 members.  The ACLU has members in all states where Trinity Health operates emergency departments, including Alabama, California, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Massachusetts, Michigan, Maryland, New Jersey, New York, Ohio, Oregon, and Pennsylvania.  The ACLU is dedicated to defending civil rights and civil liberties, including the rights of all individuals to access comprehensive reproductive health care throughout the United States and the rights of individuals with disabilities to live without discrimination in all aspects of their lives.  The ACLU vigorously protects the rights to both religious liberty and reproductive freedom and is one of the nation's leading legal experts on the intersection between these two rights. Members of the ACLU support its mission to ensure that all individuals are equally protected by the nation's Constitution and laws.  The ACLU is headquartered in New York.

8.     The ACLU's members include women who are currently pregnant, have been pregnant in the past and will become pregnant in the future; and who reside in cities or counties where: 1) a Trinity Health hospital is the only facility that provides emergency care for obstetrical and gynecological conditions; 2) an ambulance will take them to a Trinity Health hospital if they have an emergency medical condition; and/or 3) a Trinity Health hospital is the only hospital that takes the member's insurance.  At least one such ACLU member has already

been harmed because a Trinity Health hospital refused, in accordance with the Directives, to provide her with emergency pregnancy-related care in violation of EMTALA and the Rehabilitation Act.

9.     Plaintiff American Civil Liberties Union of Michigan ("Michigan ACLU"), an affiliate of the ACLU headquartered in Detroit, Michigan, is a nonprofit organization with over 8,000 members that is dedicated to defending civil rights and civil liberties in the state of Michigan, including the right of all individuals to access comprehensive reproductive health care and the rights of individuals with disabilities to live without discrimination in all aspects of their lives.   Members of the Michigan ACLU support its mission to ensure that all individuals are equally protected by the nation's Constitution and laws.  The Michigan ACLU is extensively involved in a variety of projects related to promoting equality and access to reproductive rights, and to ensuring that religious exemptions to generally applicable laws are not used to harm third parties.  The Michigan ACLU is also a founding member of MI Lead, a coalition of organizations and individuals that have organized around these issues.

10.    The Michigan ACLU's membership includes women who are currently pregnant, women who have been pregnant in the past and will become pregnant in the future; and who reside in cities or counties where: 1) a Trinity Health hospital is the only facility that provides emergency care for obstetrical and gynecological conditions; 2) an ambulance will take them to a Trinity Health hospital if they have an emergency medical condition; and/or 3) a Trinity Health hospital is the only hospital that takes the member's insurance.  At least one such Michigan ACLU member has already been harmed because a Trinity Health hospital refused, in accordance with the Directives, to provide her emergency pregnancy-related care in violation of EMTALA and the Rehabilitation Act.

11.    Defendant Trinity Health Corporation owns and operates eighty-six health care facilities in twenty-one states.

12.    Trinity Health Corporation requires each hospital that it owns and operates to adhere to the Directives, which prohibit any staff member from terminating a pregnancy even when required to stabilize a woman with an emergency medical condition or to prevent discrimination against a woman with a disability involving pregnancy complications.

13.    Trinity Health Corporation is incorporated in Indiana and has its headquarters and principal place of business in Livonia, Michigan, which is located in the Eastern District of Michigan.

14.    In 2011, Defendant Trinity Health Corporation was ranked the eleventh largest health care system, and the third largest Catholic-sponsored hospital system, in the United States.

15.    Defendant Trinity Health – Michigan does business as several hospitals in the state of Michigan, including at least 10 hospitals with an emergency department.

16.    Each of these hospitals adheres to the Directives, which prohibit any staff member from terminating a pregnancy even when necessary to stabilize a woman with an emergency medical condition or to prevent discrimination against a woman with a disability involving pregnancy complications.

17.    Trinity Health – Michigan is incorporated in Michigan and has its headquarters and principal place of business in Livonia, Michigan, which is located in the Eastern District of Michigan.

## JURISDICTION AND VENUE

18. This is an action for declaratory and permanent injunctive relief to enforce the rights of Plaintiffs' members under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C § 1395dd, and the Rehabilitation Act, 29 U.S.C. § 794.

19.   Because this is a civil action arising under laws of the United States, this Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.  Because both Defendants reside within the Eastern District of Michigan, venue is proper under 28 U.S.C. § 1391(b)(1).

## EMTALA STATUTORY FRAMEWORK

20.   EMTALA states, *inter alia*, that any hospital that receives Medicare funds and operates an emergency department:

  i.   must stabilize any individual determined to have an emergency medical condition, *see* 42 U.S.C.§ 1395dd(b); and

  ii.   may not transfer (which includes discharge) any individual with an emergency medical condition who has not been stabilized, unless, *inter alia*, the individual requests a transfer or a physician certifies that the benefits of a transfer to another medical facility outweigh the increased risks to the patient, *see id.* § 1395dd(c).

21.   EMTALA defines an emergency medical condition as "a medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in placing the health of the individual . . . in serious jeopardy, [cause] serious impairment to bodily functions, or serious dysfunction of any bodily organ or part." *Id.* § 1395dd(e)(1)(A).

22.   EMTALA defines "to stabilize" to mean "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility[.]" *Id.* § 1395dd(e)(3)(A).

23.    Defendants receive Medicare funds and operate emergency departments and are subject to the requirements of EMTALA.

## THE DIRECTIVES AND DEFENDANTS' FAILURE TO COMPLY WITH EMTALA

24.    There are a number of conditions that can arise during, or that can be exacerbated by, pregnancy where "the absence of immediate medical attention could reasonably be expected to result in placing the individual . . . in serious jeopardy, [or cause] serious impairment to bodily functions, or serious dysfunction of any bodily organ or part." 42 U.S.C. § 1395dd(e)(1)(A).

25.    For some women, the "immediate medical attention" required to stabilize the patient within the meaning of EMTALA is termination of the pregnancy.

26.    For example, a pregnant woman may experience one of a number of types of serious pregnancy complications prior to the time the embryo or fetus becomes viable. In some such cases, these complications result in significant blood loss and/or serious infection that jeopardize the health of the woman. In such cases, the standard of care may require prompt evacuation of the uterus thereby terminating the pregnancy.

27.    In addition, a number of underlying health conditions, including, for example, certain types of diabetes, heart disease, and kidney disease, can be exacerbated by pregnancy. In such circumstances, a woman may experience an emergency medical condition that requires an abortion to stabilize her and protect her health or life.

28.    As set forth in ¶¶ 12 and 16 *supra*, Defendants require that their hospitals adhere to the Directives, which are written and promulgated by USCCB. *See Ex.* 1

29.    Directive 27 states: "Free and informed consent requires that the person or the person's surrogate receive all reasonable information about the essential nature of the proposed

treatment and its benefits; it risks, side-effects, consequences and costs; and any reasonable and *morally legitimate alternatives*, including no treatment at all." (Emphasis added.)

30.   The Directives proscribe Catholic hospitals from, *inter alia*, performing certain medical procedures, even when those procedures are the prevailing standard of care.

31.   For example, Directive 45 states: "Abortion (that is, the directly intended termination of pregnancy before viability or the directly intended destruction of a viable fetus) is never permitted.  Every procedure whose sole immediate effect is the termination of pregnancy before viability is an abortion, which, in its moral context, includes the interval between conception and implantation of the embryo.  Catholic health care institutions are not to provide abortion services, even based upon the principle of material cooperation.  In this context, Catholic health care institutions need to be concerned about the danger of scandal in any association with abortion providers."

32.   The Directives do not consider abortion to be a "morally legitimate" treatment.

33.   Directive 45's prohibition on "material cooperation" with the provision of abortion services directs staff at Catholic hospitals to withhold information about pregnancy termination from patients, even when such information is necessary to safeguard the patient's life or health, and even if pregnancy loss—and the death of the fetus—is inevitable.

34.   Directive 45 prohibits terminating a pregnancy prior to viability even in circumstances where the abortion is the accepted medical standard of care to protect a patient's health or life.

35.   Directive 45 prohibits terminating a pregnancy prior to viability, even if pregnancy loss—and the death of the fetus—is inevitable.

36.   By adhering to the Directives, Defendants prohibit their hospitals and staff from terminating a woman's pregnancy, or even providing information about pregnancy termination,

in these or any other circumstances even if pregnancy loss is inevitable and/or the fetus is not viable.

37.     By adhering to the Directives and prohibiting its hospitals and staff from terminating a pregnancy in these or any other circumstances, Defendants have denied stabilizing treatment to multiple pregnant women experiencing an emergency medical condition, as defined by EMTALA, solely because that treatment conflicted with the Directives.

38.     At least one of Plaintiffs' members has already been denied stabilizing treatment (termination of the pregnancy) at one of Defendants' hospitals, in violation of EMTALA, solely because that treatment conflicted with the Directives.

39.     In 2012-2013, a public health educator discovered that at one of Defendants' hospitals alone, several women who were suffering from preterm premature rupture of membranes were denied appropriate stabilizing care, namely the termination of the pregnancy.  The denial of such treatment resulted in these women becoming septic, hemorrhaging, contracting life-threatening infections, and/or unnecessarily suffering severe pain for several days.

40.     This public health educator was subsequently informed by a hospital official employed by the Defendants' hospital that the denial of appropriate treatment as set forth in ¶ 39 was based on Defendants' adherence to and compliance with the Directives.

41.     Plaintiffs' members include women who have been pregnant, are currently pregnant and who will become pregnant in the future, and live or work in a city or county where either the only facility able to provide emergency obstetrical and gynecological care is at one of Defendants' hospitals, an ambulance will take them to one of Defendants' hospitals if

they have an emergency medical condition, and/or where one of Defendants' hospitals is the only hospital that takes the member's insurance.

42.   As a result of Defendants' policy, any and all of Plaintiffs' members who are currently pregnant or who will become pregnant in the future—and who live or work in a city or county where either the only facility able to provide emergency obstetrical and gynecological care is at one of Defendants' hospitals, an ambulance will take them to one of Defendants' hospitals if they have an emergency medical condition, and/or where one of Defendants' hospitals is the only hospital that takes the member's insurance—risk being denied appropriate stabilizing care in the event of a pregnancy-related emergency medical condition, in violation of EMTALA and to the detriment of their life and health.

43.   At least one of Plaintiffs' pregnant members with a history of severe pregnancy complications fears that because of Defendants' repeated violations of EMTALA, she will be unable to obtain treatment from Defendants for a pregnancy-related emergency medical condition and suffers serious mental anguish and distress as a result.

44.   Defendants' policy threatens Plaintiffs' members with real, immediate, and substantial harm by placing barriers on their ability to obtain stabilizing treatment for pregnancy – related emergency medical conditions from Defendants.

**REHABILITATION ACT STATUTORY FRAMEWORK**

45.   Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, prohibits federally funded programs or activities from excluding, denying benefits to, or discriminating against, an "otherwise qualified individual with a disability in the United States . . . solely by reason of her or his disability[.]"

10

46.     The Rehabilitation Act's implementing regulations further provide that "[a] [federal funds] recipient shall make reasonable accommodation to the known physical or mental limitations of an otherwise qualified handicapped applicant . . . unless the recipient can demonstrate that the accommodation would impose an undue hardship on the operation of its program."  28 C.F.R. § 41.53.

47.     An entity's failure to provide a reasonable accommodation to a disabled individual that the individual needs in order to enjoy meaningful access to the entity's benefits and/or services constitutes discrimination under the Rehabilitation Act.

48.     A disability includes "a physical or mental impairment that substantially limits one or more major life activities of [an] individual[.]"  *See* 29 U.S.C. § 705(20)(B) (citing 42 U.S.C. § 12102(1)).

49.     A major life activity includes, but is not limited to, the operation of reproductive functions, eating, sleeping, concentrating, and working.  29 U.S.C. § 705(20)(B) (citing 42 U.S.C. § 12102(2)).

50.     Included in the Rehabilitation Act's definition of "program or activity" are "all of the operations of . . . an entire corporation . . . or other private organization . . . which is principally engaged in the business of providing . . . health care . . . ."  29 U.S.C. § 794(b)(3)(A)(ii).

51.     Defendants are principally engaged in the business of providing health care and receive federal funds, and are therefore subject to § 504 of the Rehabilitation Act.

## THE DIRECTIVES AND DEFENDANTS' FAILURE TO COMPLY WITH THE REHABILITATION ACT

52.     Certain pregnancy complications cause physical impairments that substantially limit major life activities, (*i.e.*, the operation of reproductive functions, eating, sleeping, concentrating, and working) and therefore constitute a disability under the Rehabilitation Act.

53.     Certain non-pregnancy related disabilities under the Rehabilitation Act, such as diabetes, may also cause severe pregnancy complications.

54.     Certain disabilities involving pregnancy complications require stabilizing treatment under EMTALA, including termination of the pregnancy.

55.     This treatment, and the provision of information about this treatment, is barred by the Directives.

56.     Certain disabilities involving pregnancy complications require emergency medical services under the applicable standard of care for the practice of medicine, including termination of the pregnancy.

57.     This treatment, and the provision of information about this treatment, is barred by the Directives.

58.     Defendants' hospitals do not have a policy that prohibits staff members from providing nondisabled individuals or individuals with disabilities unrelated to pregnancy complications who have emergency medical conditions appropriate stabilizing treatment, as required by EMTALA.

59.     Defendants do not have a policy that prohibits staff members at their hospitals from providing nondisabled individuals or individuals with disabilities unrelated to pregnancy complications full emergency medical services, or information about emergency services, in accordance with the applicable standard of care.

60.    By adhering to the Directives, Defendants fail to provide a reasonable accommodation to individuals with disabilities involving certain pregnancy complications that ensure such individuals obtain full access to all necessary emergency services.

61.    Defendants' hospitals routinely provide obstetrical and gynecological care to pregnant women and have the necessary facilities, staff, and equipment to provide women suffering from disabilities involving certain pregnancy complications with all necessary emergency care, including pregnancy termination.  Indeed, Defendants permit their hospital staff members to perform the same procedures that are also used to terminate a pregnancy, such as induction of labor and dilation and curettage, in other circumstances.

62.    Providing women with disabilities involving certain pregnancy complications with pregnancy termination, or information about pregnancy termination, when such treatment is required by EMTALA or the standard of care in emergency situations would not impose an undue hardship on Defendants.

63.    As set forth in ¶ 39 *supra*, Defendants have already excluded, denied services to, and discriminated against, women with disabilities involving pregnancy complications in violation of the Rehabilitation Act.  As a result, these women did not receive emergency care that they were otherwise qualified to obtain solely by reason of their disabilities and suffered harm as a result.

64.    As set forth in ¶ 38 *supra*, Defendants have already excluded, denied services to, and discriminated against, at least one of Plaintiffs' members who suffered from a disability involving pregnancy complications in violation of the Rehabilitation Act.  As a result, she did not receive emergency care that she was otherwise qualified to obtain solely because of her disability and suffered harm as a result.

13

65.     Defendants knew or had reason to know of the disabilities suffered by these women.

66.     As set forth in ¶ 43 *supra*, at least one of Plaintiffs' pregnant members fears that she will be unable to obtain emergency medical services from Defendants for a disability involving pregnancy complications solely by reason of that disability and suffers serious mental anguish and distress as a result.

67.     Defendants' policy threatens Plaintiffs' members with real, immediate, and substantial harm by impeding their ability to obtain full emergency medical services, or information about full emergency medical services, from Defendants' hospitals that they are otherwise qualified to obtain solely by reason of their disabilities.

## DECLARATORY AND INJUNCTIVE RELIEF

68. The allegations contained in the preceding paragraphs are adopted by reference.

69. An actual and immediate controversy exists between Plaintiffs and Defendants. Plaintiffs are entitled to a declaration of rights with respect to this controversy.  Without such a declaration, Defendants' enforcement of the Directives threatens Plaintiffs' members with the deprivation of their rights under the law and puts their health and/or life at risk.

70.     Absent declaratory and permanent injunctive relief, Defendants will continue to withhold emergency abortion care from pregnant women, including Plaintiffs' members, in violation of EMTALA.

71.     Absent declaratory and permanent injunctive relief, Defendants will continue to discriminate against, exclude, and deny services to women with disabilities involving pregnancy complications, including Plaintiffs' members, by withholding full emergency

14

services or information about full emergency services, in violation of the standard of care and the Rehabilitation Act.

## COUNT ONE

**Violation of 42 U.S.C. § 1395dd**
**Emergency Medical Treatment and Active Labor Act (EMTALA)**
**(Declaratory and Injunctive Relief)**

72.    The allegations contained in the preceding paragraphs are adopted by reference.

73.    As a result of Defendants' policy and practice of adhering to the Directives, Defendants have, and will continue to, systematically violate EMTALA by refusing to provide pregnant women suffering emergency medical conditions with abortions necessary to stabilize them in accordance with the standard of care, thereby causing harm to pregnant women, including Plaintiffs' members.

## COUNT TWO

**Violation of 29 U.S.C. § 794**
**Rehabilitation Act**

74.    The allegations contained in the preceding paragraphs are adopted by reference.

75.    As a result of Defendants' policy and practice of adhering to the Directives, Defendants have, and will continue to, systematically violate the Rehabilitation Act by excluding, denying services to, and/or discriminating against women with disabilities involving pregnancy complications, solely by reason of their disabilities, thereby preventing them from accessing full emergency services or information about full emergency services they are otherwise qualified to obtain in accordance with the standard of care, and causing harm to Plaintiffs' members.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request that this Court:

    a.   assert jurisdiction over this matter;

    b.   issue a declaratory judgment in favor of Plaintiffs declaring that:

        1)  Defendants must provide appropriate stabilizing treatment, including pregnancy termination when such treatment is the standard of care, for pregnant women with emergency medical conditions within the meaning of EMTALA; and

        2)  Defendants must allow women with disabilities within the meaning of the Rehabilitation Act that involve pregnancy complications to have full access to hospital emergency services, and information about hospital emergency services, including pregnancy termination, where such treatment is the standard of care;

    c.   issue a permanent injunction that bars Defendants from:

        1)  withholding appropriate stabilizing treatment, including pregnancy termination, from women with pregnancy-related emergency medical conditions within the meaning of EMTALA, where pregnancy termination is the standard of care; and

        2)  excluding, denying services to, or discriminating against, women with disabilities under the Rehabilitation Act that involve pregnancy complications, by refusing to provide them with full access to emergency services, and information about hospital emergency services, including pregnancy termination, where such treatment is the standard of care;

    d.   award Plaintiffs the costs of this action, including reasonable attorneys' fees; and

    e.   award such other relief as the Court deems just and appropriate.

Respectfully submitted,

| | |
|---|---|
| /s/ Brooke A. Merriweather-Tucker | /s/ Alexa Kolbi-Molinas |
| Brooke A. Merriweather-Tucker (P79136) | Alexa Kolbi-Molinas |
| Daniel S. Korobkin (P72842) | Brigitte Amiri |
| Michael J. Steinberg (P48085) | Jennifer Dalven |
| Kary L. Moss (P49759) | Alyson Zureick* |

American Civil Liberties Union
     Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6823
btucker@aclumich.org
dkorobkin@aclumich.org
msteinberg@aclumich.org

Jennifer B. Salvatore (P66640)
Cooperating Attorney, American
  Civil Liberties Union Fund of Michigan
Nacht, Roumel & Salvatore, PC
101 North Main Street, Suite 555
Ann Arbor, MI 48104
(734) 663-7550
jsalvatore@nachtlaw.com

Attorneys for Plaintiff
Michigan ACLU

Dated:  October 1, 2015

American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2633
akolbi-molinas@aclu.org
bamiri@aclu.org
jdalven@aclu.org
azureick@aclu.org

Attorneys for Plaintiff ACLU

*admission pending*