IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| AMERICAN CIVIL LIBERTIES UNION, on behalf of its members, and AMERICAN CIVIL LIBERTIES UNION of MICHIGAN, on behalf of its members, | ) ) ) ) ) ) | Hon. Gershwin A. Drain<br><br>Case No. 15-cv-12611 |
| Plaintiffs, | ) ) ) | MOTION TO INTERVENE AS DEFENDANTS |
| vs. | ) ) ) | |
| TRINITY HEALTH CORPORATION, an Indiana corporation, and TRINITY HEALTH – MICHIGAN, a Michigan corporation, | ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CATHOLIC MEDICAL ASSOCIATION, on behalf of its members, | ) ) ) | |
| CHRISTIAN MEDICAL AND DENTAL ASSOCIATION, on behalf of its members, | ) ) ) ) | |
| AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS, on behalf of its members, and | ) ) ) ) ) | |
| CONCERNED WOMEN FOR AMERICA, on behalf of its members, | ) ) ) | |
| Proposed Defendant-Intervenors. | ) | |

COME NOW Proposed Defendant-Intervenors CATHOLIC MEDICAL ASSOCIATION ("Catholic Medical"), CHRISTIAN MEDICAL AND DENTAL ASSOCIATION ("Christian Medical"), AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS ("AAPLOG"), and CONCERNED WOMEN FOR AMERICA ("CWA"), pursuant to Fed. R. Civ. P. 24(a) and Loc. R. Civ. P. 7.1 of this Court, and hereby move for leave to intervene as party Defendants in the above-captioned case.

(1)    Applicants file this timely motion seeking intervention of right pursuant to Fed. R. Civ. P. 24(a)(2). The Applicants' members, individual medical professionals and women seeking healthcare, are among the class of individuals Plaintiffs desire to discriminate against and prohibit from acting according to their conscience.

(2)    Specifically, the Plaintiffs seek to require Trinity hospitals to perform abortions and other medical procedures that contravene the convictions of the Applicants' members.

(3)    To grant the relief the Plaintiffs seek could nullify or impede Applicants' ability to protect these convictions. Thus, Applicants have a strong interest in defending the rule against Plaintiffs' facial attack.

2

(4)     Moreover, Defendants' interests potentially diverge from those of Applicants, and thus Applicants' interests may not be adequately represented by existing parties to the case.

(5)     Furthermore, applicants bring to the court their own unique perspective on the importance of this rule to preserving important federal and state constitutional and statutory rights and their participation enables a full development of the factual and legal issues presented in this case.

(6)     This motion is timely and will not prejudice the interests of the parties.

(7)     In the alternative, Applicants seek permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1).  Applicants' defenses and the present action share common questions of law and fact; their participation will not delay or prejudice the adjudication of the rights of the parties; and this motion to intervene is timely.

(8)     In support of this motion, Applicants rely on the accompanying Brief in Support of Motion to Intervene and attached declarations.  Pursuant to Fed. R. Civ. P. 24(c), Applicants also submit herewith the accompanying proposed Response to Complaint.

(9)     On December 10, 2015, Applicants' counsel contacted plaintiffs' and defendants' counsel by telephone in order to seek concurrence in this motion under E.D. Mich. LCR 7.1(a). The attorneys held a conference in which the nature of the

motion and its legal basis were explained.  This motion is necessary because plaintiffs' counsel did not concur in the relief requested and defendants' counsel took no position.

Respectfully submitted this 16th day of December 2015,

> Counsel for PROPOSED DEFENDANT-INTERVENORS: CATHOLIC MEDICAL ASSOCIATION, CHRISTIAN MEDICAL AND DENTAL ASSOCIATION, AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS, and CONCERNED WOMEN FOR AMERICA.

/s/ Matthew S. Bowman
Matthew S. Bowman
Michigan Bar # P66239
Alliance Defending Freedom
440 First Street NW
Washington, D.C. 20001
202.393.8690
202.347.3622 (fax)
mbowman@ADFlegal.org

Kevin H. Theriot*
Arizona Bar #030446
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
ktheriot@ADFlegal.org

Local Counsel
Steven M. Jentzen,
MI Bar No. P29391
ATTORNEY AT LAW
106 S. Washington
Ypsilanti, MI 48197
(734) 482-5466
(734) 482-2440 Fax
smj@jentzenlaw.com

Attorneys for Defendant- Intervenors


*Notice of Appearance forthcoming

Thomas Van Dusen (P30602)
Dennis J. Levasseur (P39778)
Michael J. Serra (P77741)
BODMAN PLC
1901 St. Antoine St., 6th Floor at Ford
Field
Detroit, Michigan 48226
(313) 259-7777
dlevasseur@bodmanlaw.com
tvandusen@bodmanlaw.com
mserra@bodmanlaw.com
*Attorneys for Defendants*

/s/ Matthew S. Bowman
Matthew S. Bowman
Counsel for Defendant-Intervenors

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION, on behalf of its members, and AMERICAN CIVIL LIBERTIES UNION of MICHIGAN, on behalf of its members, | ) Hon. Gershwin A. Drain ) ) ) Case No. 15-cv-12611 ) ) |
| Plaintiffs, | ) BRIEF IN SUPPORT OF MOTION ) TO INTERVENE AS |
| vs. | ) DEFENDANTS ) |
| TRINITY HEALTH CORPORATION, an Indiana corporation, and TRINITY HEALTH – MICHIGAN, a Michigan corporation, | ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| CATHOLIC MEDICAL ASSOCIATION, on behalf of its members, | ) ) |
| CHRISTIAN MEDICAL AND DENTAL ASSOCIATION, on behalf of its members, | ) ) ) ) |
| AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS, on behalf of its members, and | ) ) ) ) ) |
| CONCERNED WOMEN FOR AMERICA, on behalf of its members, | ) ) ) |
| Proposed Defendant-Intervenors. | ) |

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................. ii

**CONSISE STATEMENT OF THE ISSUE PRESENTED CONTROLLING OR MOST APPROPRIATE** ...................................1

**AUTHORITY FOR RELIEF SOUGHT** ............................................1

**INTRODUCTION** .............................................................................2

**ARGUMENT** ....................................................................................8

I.    APPLICANTS ARE ENTITLED TO INTERVENE OF RIGHT UNDER FED. R. CIV. P. 24(A). .........................................................8

A.   Applicants' Motion is Timely Because It Was Promptly Filed Before Any Substantive Motions Were Granted or Hearings Held. .........................................9

B.   Applicants Have Sufficient Interests Relating to the Subject Matter of this Action Because A Grant of Relief to Plaintiffs Threatens Their Rights of Conscience. ..................................................................10

C.   The Applicants' Interests May Be Impaired By this Litigation Because Their Ability to Protect Their Rights of Conscience Will Be Impeded. .......18

D.   Applicants Satisfy the Requirement of Showing Inadequate Representation by Defendants Because Their Unique Legal Arguments and Contribution to the Factual Record Warrant Intervention. ..................................21

II.   IN THE ALTERNATIVE, APPLICANTS SHOULD BE GRANTED PERMISSION TO INTERVENE UNDER FED. R. CIV. P. 24(B). ...............................23

**CONCLUSION** ...............................................................................24

i

# TABLE OF AUTHORITIES

<u>*Cases*</u>**:**

*Atlantis Development Corp. v. United States*,
   379 F.2d 818 (5th Cir.1967) ...........................................................................19

*Burwell v. Hobby Lobby*,
   134 S. Ct. 2729 (2014)...........................................................................13, 22

*California ex. rel. Lockyer v. United States,*
   450 F.3d 436 (9th Cir. 2006) ............................................................. Passim

*Davis v. Lifetime Capital,*
   560 Fed. Appx. 477 (6th Cir. 2014)...........................................................9, 10

*Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal,*
   546 U.S. 418 (1996)...................................................................................13

*Grutter v. Bollinger,*
   188 F.3d 394 (6th Cir. 1999) .................................................................10, 11

*Haring v. Blumenthal,*
   471 F. Supp. 1172 (D.D.C. 1979)...............................................................13

*Harris v.Olzsewski,*
   103 F.3d 1240 (6th Cir.1997) .....................................................................15

*National Family Planning & Reproductive Health Association v.*
   *Gonzales*,
   468 F.3d 826 (D.C. Cir. 2006)....................................................................13

*New York Public Interest Research Group v.*
   *Regents of the University of the State of New York*
   516 F.2d 350 (2d Cir. 1975) ...................................................................1, 11

*Nuesse v. Camp,*
   385 F.2d 694 (D.C. Cir. 1967)....................................................................19

*Planned Parenthood of Indiana, Inc v.*
    *Commissioner of the Indiana State Department of Health,*
    699 F.3d 962 (7th Cir. 2012) ...................................................15, 16

*Thomas v. Review Board of Indiana Employment Security Division,*
    450 U.S. 707 (1981)...........................................................13, 15

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972)......................................................................21

*United States v. City of New York,*
    198 F.3d 360 (2d Cir.1999) .......................................................11

### ***Constitutional Provision:***

Free Exercise Clause of the First Amendment (1974)......................................13, 20

### ***Rules:***

F.R.C.P. 24(a) ...................................................................9, 10, 21

F.R.C.P. 24(b)(3)..............................................................23, 24

65 Fed. Reg. 41273-41275 ....................................................13

### ***Statutes, Regulations and Bills:***

8 U.S.C. § 1182(g) (1996) .......................................................17

18 U.S.C. § 3597 (1994) .........................................................16

20 U.S.C. §1688 (1988) .........................................................16

22 U.S.C. §7631(d) (2003) ......................................................18

29 U.S.C. § 794 (Rehabilitation ACT) .......................................2, 20, 21

42 U.S.C. § 238n (1996) .........................................................17

42 U.S.C. §§ 238n(a)(1), (c)(2) ("Coats-Snowe Amendment")............13, 14, 20, 22

42 U.S.C. § 300a-7 (Church Amendment) ................................13, 16, 20

42 U.S.C. § 1395dd (EMTALA) .................................................2, 3, 21

42 U.S.C. § 1395w-22(j)(3)(B) (1997) ....................................................17

42 U.S.C. § 1396u-2(b)(3) (1997) .........................................................17

42 U.S.C. § 2996f(b) (1974) ................................................................16

42 U.S.C.A. § 2000-bb-1et seq (Religious Freedom Restoration Act of
1993). .......................................................................13, 20, 21

48 C.F.R. § 1609.7001(c)(7) (1998) ....................................................17

California Health & Safety Code § 1317(a) ..........................................12

Health Insurance Bill of Rights Act of 1997 (S. 353) ............................17

Health Security Act, H.R. 3600 (103rd)(1994)........................................17

Title III of Division I (Department of State, Foreign Operations, and Related
Programs Appropriations Act) of the Consolidated Appropriations Act,
2012, Pub. L. No. 112-74..................................................................16

Title V of Division F (Departments of Labor, Health and Human Services,
and Education, and Related Agencies Appropriations Act) of the
Consolidated Appropriations Act, 2012, Pub. L. No. 112-74 .................18

Title VII of the Civil Rights Act of 1964...............................................13

Title VII of Division C (Financial Services and General Government
Appropriations Act) of the Consolidated Appropriations Act, 2012, Pub. L.
No. 112-74........................................................................17, 20

Title VIII of Division C (Financial Services and General Government
Appropriations Act) of the Consolidated Appropriations Act, 2012, Pub. L.
No. 112-74........................................................................18

Weldon Amendment, Consolidated Appropriations Act, 2009, Pub. L. No.
111-117, 123 Stat 3034 ................................................ Passim

## *Other Authorities*:

7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice
and Procedure § 1901 (1986).................................................................2

COME NOW Proposed Defendant-Intervenors the Catholic Medical Association ("Catholic Medical"), Christian Medical and Dental Association ("Christian Medical"), American Association of Pro-Life Obstetricians and Gynecologists ("AAPLOG"), and Concerned Women for America ("CWA") (collectively the "proposed defendant-intervenors" or "Applicants"), and submit this Brief in Support of Motion to Intervene as Defendants in the above-captioned case.

## CONSISE STATEMENT OF THE ISSUE PRESENTED

Are the Applicants entitled to intervene on behalf of Defendants in order to defend their right not to be forced to perform abortions in violation of their religious convictions, and, as required by their religious convictions, to have access to providers that do not perform abortions?

## CONTROLLING OR MOST APPROPRIATE
## AUTHORITY FOR RELIEF SOUGHT

From the comprehensive listing of cases cited in this brief and included in the Table of Authorities, the most directly applicable authorities are as follows:

*Cal. ex. rel. Lockyer v. United States*, 450 F.3d 436 (9th Cir. 2006)

*Mich. State AFL–CIO v. Miller,* 103 F.3d 1240 (6th Cir.1997)

*N.Y. Pub. Interest Research Grp. v.*
*Regents of the Univ. of the State of N.Y.*, 516 F.2d 350 (2d Cir. 1975)

## INTRODUCTION

On July 23, 2015, Plaintiffs brought the instant action against Trinity Health Corp. and Trinity Health – Michigan ("Trinity"), seeking declaratory and injunctive relief.  Plaintiffs filed an amended complaint on October 1, 2015 which alleges Trinity owns and operates eighty-six hospitals in twenty-one states, and that these hospitals comply with Catholic doctrine which prohibits abortion. Plaintiffs claim this compliance violates the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA") and the Rehabilitation Act, 29 U.S.C. § 794. Amended Complaint ¶ 1 ("Amd. Comp.).

"'[A] lawsuit often is not merely a private fight and will have implications on those not named as parties.'" *Mich. State AFL–CIO v. Miller,* 103 F.3d 1240, 1245 (6th Cir.1997) (quoting 7C Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1901 (1986)). That is certainly true here where Applicants move to intervene to defend their members' rights of conscience under the First Amendment and federal statutory law.  Catholic Medical, Christian Medical, and AAPLOG (the "Medical Applicants") seek to defend their members' right not to be forced to provide, assist in, or refer for abortions; against their sincere religious, conscientious, and ethical objections to this practice. CWA seeks to defend its members' right to choose a healthcare provider that does not perform abortions. Should the Court declare EMTALA or the Rehabilitation Act require

2

healthcare providers receiving federal funds to perform abortions, the Medical Applicants' members and other federal aid recipients would be subjected to the imminent threat of being compelled to provide, assist in, or refer for abortions. CWA's members' right to choose a provider that does not perform abortions would be severely restricted. Applicants' best recourse to protect its members' paramount interests is through intervention in this case.

## INTERVENORS' INTERESTS

### THE CATHOLIC MEDICAL ASSOCIATION

Catholic Medical is a nonprofit national organization of Catholic physicians and allied healthcare professionals with over 1,100 members.  Declaration of Dr. Lester A. Ruppersberger ¶ 3; Ex. A.  In addition to Catholic Medical's physician members, it also has associate members from a number of allied healthcare professions, including nurses and physician assistants.  *Id.* at ¶ 3.  Some Catholic Medical members are employed by or have admitting privileges with Trinity hospitals, as well as other providers that receive federal funding.  *Id.* at ¶ 4. Federal law prohibits employers that receive federal funds from discriminating against AAPLOG's members for refusing to provide or to refer for abortions. Catholic Medical is opposed to the practice of abortion as contrary to the teaching and tradition of the Catholic Church, to respect for the sanctity of human life, to traditional Judeo-Christian medical ethics, and to the good of patients.  *Id.* at ¶ 5. Catholic Medical's members are committed to the sanctity of human life and it

3

would violate their consciences to participate in or refer for abortions. *Id.* at ¶ 6. It is likely that if Catholic Medical's members are forced or coerced to perform or assist in abortions or other unethical actions in violation of their consciences, they would leave the profession or relocate from those jurisdictions compelling them to do so instead of performing or referring for abortions. *Id.* at ¶ 6. Catholic Medical has actively sought conscience protections for its members and other healthcare professionals who might otherwise be forced by laws or regulations or by their employers to provide or refer for abortions. *Id.* at ¶ 7. Catholic Medical will continue to be an advocate for rights of conscience for its own members and all medical professionals in courts and legislatures both at the state and federal levels. *Id.*

### THE CHRISTIAN MEDICAL AND DENTAL ASSOCIATION

Christian Medical is a nonprofit national organization of Christian physicians and allied healthcare professionals with over 16,000 members. Declaration of Dr. David Stevens ¶ 3; Ex. B. Some Christian Medical members are employed by, or hold admitting privileges with, Trinity hospitals, as well as other providers that receive federal funding. *Id.* at ¶ 4. Federal law prohibits employers that receive federal funds from discriminating against Christian Medical's members for refusing to provide or to refer for abortions. In addition to Christian Medical's physician members, it also has associate members from a

4

number of allied healthcare professions, including nurses and physician assistants.
*Id.*

Christian Medical is opposed to the practice of abortion as contrary to
Scripture, respect for the sanctity of human life, and traditional, historical and
Judeo-Christian medical ethics. *Id.* at ¶ 5. Christian Medical's members are
committed to the sanctity of human life and it would violate their consciences to
participate in or refer for abortions. *Id.* at ¶ 6. It is likely that if Christian
Medical's members are forced to perform or assist in abortions in violation of their
consciences, they would leave the profession or relocate from those jurisdictions
compelling them to do so instead of performing or referring for abortions. *Id.*
Christian Medical has actively sought conscience protections for its members and
other healthcare professionals who might otherwise be forced by laws or
regulations or by their employers to provide or refer for abortions. *Id.* at 7.

THE AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS

AAPLOG is one of the largest special interest groups within the American
College of Obstetricians and Gynecologists, Declaration of Dr. Donna Harrison ¶
3; Ex. C with at least six hundred (600) dues-paying members and over fifteen
hundred (1,500) doctors associated with the organization. *Id.* at ¶ 5. AAPLOG
members affirm the following Mission Statement:

    a. That we, as physicians, are responsible for the care and well being
       of both our pregnant woman patient and her unborn child.

b. That the unborn child is a human being from the time of fertilization.

c. That elective disruption/abortion of human life at any time from fertilization onward constitutes the willful destruction of an innocent human being, and that this procedure will have no place in our practice of the healing arts.

d. That we are committed to educate abortion-vulnerable patients, the general public, pregnancy center counselors, and our medical colleagues regarding the medical and psychological complications associated with induced abortion, as evidenced in the scientific literature.

e. That we are deeply concerned about the profound, adverse effects that elective abortion imposes, not just on the women, but also on the entire involved family, and on our society at large.

*Id.* at ¶ 4.

AAPLOG and its members oppose the practice of abortion for a variety of reasons, including religious and moral beliefs and the belief that the practice of abortion is inconsistent with professional medical ethics. *Id.* at ¶ 5. One of AAPLOG's primary purposes is to reaffirm the unique value and dignity of individual human life in all states of its development and subsequent course from the moment of conception. *Id.* at ¶ 6. To this end, AAPLOG sponsors and conducts research and educational programs consistent with this purpose. *Id.* AAPLOG is also deeply committed to defending the right of conscience of doctors, including its members, not to perform, refer for or to otherwise assist in the practice of abortion. *Id.* at 7. Some AAPLOG members who practice obstetrics and gynecology are either employed by or hold admitting privileges with Trinity

6

hospitals, as well as other providers that receive federal funding. *Id.* at ¶¶ 8-9. AAPLOG's members are committed to the sanctity of human life and it would violate their consciences to participate in or refer for abortions. *Id.* at ¶ 10. It is likely that if AAPLOG members are forced to perform or assist in abortions in violation of their consciences, they would leave the profession or relocate from those jurisdictions compelling them to do so instead of performing or referring for abortions. *Id.* at ¶ 10. AAPLOG has actively sought conscience protections for its members and other healthcare professionals who might otherwise be forced by laws or regulations or by their employers to provide or refer for abortions. *Id.* at 11.

Both Christian Medical and AAPLOG have previously been granted intervention as of right to defend protection of conscience rights in two separate facial challenges to the constitutionality of the Weldon Amendment. *Cal. ex. rel. Lockyer v. United States*, 450 F.3d 436, 445 (9th Cir. 2006); *Nat'l. Family Planning & Reproductive Health Ass'n. v. Gonzales*, 468 F.3d 826, 827 (D.C. Cir. 2006) (listing Christian Medical and AAPLOG as appellees); *Nat'l. Family Planning & Reproductive Health Ass'n.*, No. 04-02148 (D. D.C. Sept. 28, 2005) (order granting motion of Christian Medical and AAPLOG to intervene as of right).

7

CONCERNED WOMEN FOR AMERICA

CWA is the largest public policy women's organization in the United States, with thousands of members from all 50 states. Declaration of Mario Diaz at ¶ 4; Ex. D. Through its grassroots organization, CWA encourages policies that strengthen families and advocates the traditional virtues that are central to America's cultural health and welfare. *Id.* at ¶ 5.

CWA actively promotes legislation, education, and policymaking consistent with its philosophy. *Id.* at ¶ 6. Its members (some of whom are Medicaid eligible and/or recipients) are people whose voices are often overlooked – average, middle-class American women whose views are not represented by the powerful or the elite. *Id.* at ¶ 7. CWA is profoundly committed to the sanctity of life and opposes the practice of abortion. *Id.* at ¶ 8. Some of CWA's members have a religious conviction to only seek healthcare from providers like Trinity hospitals that do not perform abortions. *Id.* at ¶ 9. CWA members have received or plan to receive health services (including pregnancy related services) at Trinity hospitals in most states where their facilities are located. *Id.* at ¶ 10.

## ARGUMENT

I.  APPLICANTS ARE ENTITLED TO INTERVENE OF RIGHT UNDER FED. R. CIV. P. 24(A).

Federal Rule of Civil Procedure 24(a) provides,

8

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).  The Sixth Circuit interprets this Rule as establishing four elements that must be satisfied: (1) timeliness, (2) substantial legal interest, (3) lack of ability to protect that interest absent intervention, and (4) inadequate representation by the parties. *Miller*, 104 F.3d at 1245. As demonstrated below, Applicants easily satisfy these elements.

      A.    Applicants' Motion is Timely Because It Was Promptly Filed Before Any Substantive Motions Were Granted or Hearings Held.

Applicants' motion is timely under Fed. R. Civ. P. 24(a).  They promptly filed their motion to intervene just six weeks after Defendants filed their motion to dismiss on November 6, 2015. The motion to dismiss will not be heard till February 16, 2016.  *See Miller* at 1244 & 1245 (motion to intervene timely when filed "prior to any hearings in the case" and when "the case was obviously in its initial stage"). *See also Davis v. Lifetime Capital,* 560 Fed. Appx. 477, 490-94 (6th Cir. 2014) (motion was timely despite being filed four years after case inception and 10 months after learning of interest to intervene because, *inter alia*, suit had not substantially

9

progressed).    Applicants do not intend to seek any delay in the case so intervention will cause neither prejudice to the existing parties or any delay in these proceedings.    Moreover, denial of the motion will prejudice Applicants for the reasons set forth below.    *See infra* at § B.    Under these circumstances, this motion is timely.

B.    Applicants Have Sufficient Interests Relating to the Subject Matter of this Action Because A Grant of Relief to Plaintiffs Threatens Their Rights of Conscience.

"This circuit has opted for a rather expansive notion of the interest sufficient to invoke intervention of right. …[C]lose cases should be resolved in favor of recognizing an interest under Rule 24(a)." *Miller,* 103 F.3d at 1245 & 1247 (citation and quotation marks omitted). No "specific legal or equitable interest" is required. *Davis*, 560 Fed. Appx. at 495.  "[A]n intervenor need not have the same standing necessary to initiate a lawsuit." *Grutter v. Bollinger*, 188 F.3d 394, 398 (6th Cir. 1999) (no need for a legally enforceable interest like a consent decree to have a substantial legal interest).

In *Miller,* the Sixth Circuit relies on a closely analogous Second Circuit case that ruled a professional medical association may intervene as of right in a legal challenge to a medical regulation affecting its members. 103 F.3d at 1246 (citing *N.Y. Pub. Interest Research Grp. v. Regents of the Univ. of the State of N.Y.*, 516 F.2d 350, 351-52 (2d Cir. 1975) (per curiam)).  *N.Y. Pub. Interest Research Grp.*

held a medical association "has a sufficient interest to permit it to intervene since the validity of a regulation from which its members benefit is challenged" because they "have an interest in the action as professionals" in that the regulation "might well lead to significant changes in the profession and in the way [medical professionals] conduct their businesses." 516 F.2d at 352. The court also noted that the medical association's members had economic interests at stake. *Id.* Lastly, the court denied that concern on the part of the regulation's promulgators for the interests of patients did *not* mean physicians "d[id] not also have interests at stake," *id.*, stating that the promulgators acknowledged that protecting the interests of the physicians "[wa]s one basis for sustaining the regulation." *Id.* Such interests constitute "direct, substantial, and legally protectable" interests, *United States v. City of N.Y.*, 198 F.3d 360, 365 (citations omitted), and are "sufficient to support intervention of right." *Id.* (citing *N.Y. Pub. Interest Research Grp.*, 516 F.2d at 351-52). *See also Grutter,* 188 F.3d at 397 & 399 (nonprofit organization whose mission was to preserve educational opportunities of minorities had substantial interest in case challenging race-conscious admissions policy).

Likewise, should Plaintiffs succeed here, there would be substantial changes in the medical professions and the way medical professionals "conduct their business," including elimination or weakening of protections for medical professionals' rights not to be compelled to perform, refer for, or assist in

11

abortions. Further, Applicants' members have substantial economic interests at stake because they may be forced to relocate to jurisdictions that respect their rights or to leave the profession altogether should they be compelled to perform abortions as Plaintiffs desire. Stevens Declaration ¶ 6; Harrison Declaration ¶ 10; Ruppersberger Declaration ¶ 6.

This case is remarkably similar to *Lockyer* where AAPLOG and Christian Medical were permitted to intervene. At issue there was Cal. Health & Safety Code § 1317(a) which compels healthcare providers to deliver medical services in emergency situations where there is "danger of loss of life, or serious injury or illness." 450 F.3d at 439. The state sued the federal government seeking a declaration that the Weldon Amendment's protection of providers who refuse to participate in abortion did not preclude the state from enforcing its emergency medical care statute which could be read as mandating the provision of abortion services. *Id.* That is essentially what the Plaintiffs are attempting to do in the case at bar. They are asking this Court to declare that federal law requires healthcare providers receiving federal funding like Trinity's hospitals and the Medical Applicants' members to deliver abortion services in emergency situations. Amd. Comp. at 16 (Request for Relief).

Such a declaration would plainly affect the interests of the Medical

12

Applicants' members who work at Trinity hospitals. Those who work at other facilities that receive federal funding also have an interest in this case because it would set a precedent for them to be sued by the Plaintiffs and others, as well as discriminated against by governmental and private entities if they refuse to perform abortions.

All Applicants have a substantial legal interest in seeing that existing federal protection of their religious convictions is not reduced by the relief Plaintiffs request. Depending on the situation, they are currently protected by the Free Exercise Clause of First Amendment,[1] the Religious Freedom Restoration Act of 1993, 42 U.S.C.A. § 2000bb-1(b),[2] Title VII of the Civil Rights Act of 1964,[3] 42 U.S.C. § 300a-7 ("Church Amendment"),[4] 42 U.S.C. §§ 238n(a)(1), (c)(2) ("Coats-

---

[1] *See Thomas v. Review Board of Indiana Employment Security Division*, 450 U.S. 707 (1981) (government is prohibited from coercing individuals to violate their religious convictions in the employment context).

[2] *See Burwell v. Hobby Lobby*, 134 S.Ct. 2751 (2014) (federal statute requiring company to pay for abortion causing drugs violated RFRA); *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418 (1996) (federal statute prohibiting exercise of religious convictions violated RFRA).

[3] *See Haring v. Blumenthal*, 471 F. Supp. 1172 (D.D.C. 1979), *cert denied*, 452 U.S. 939 (1981), *reh'g denied*, 453 U.S. 927 (1981) (employer was required to accommodate an employee's religious objections to doing abortion related work).

[4] The Church Amendment prohibits entities that receive certain federal funds from requiring medical professionals to participate in abortion for religious reasons. As the Clinton Administration recognized, the Church Amendment has for decades forbidden Title X clinics from requiring staff to perform abortion counseling or to make abortion referrals.  See 65 Fed. Reg. 41273-41275 (Secretary Shalala noting that the Church Amendment has always prohibited Title X grantees from requiring their employees to provide abortion counseling and referrals); *NFPRHA v. Gonzales*, 468 F.3d 826, 829 (D.C. Cir. 2006) (making this same point).

13

Snowe Amendment"),[5] and the Weldon Amendment, which prohibits entities that receive Title X funds from discriminating against providers that refuse to do abortions.

If Plaintiffs are successful, it will necessarily limit these protections. *Lockyer* found this interest sufficient for purposes of intervention as of right.

> If the Weldon Amendment is declared unconstitutional or substantially narrowed as a consequence of this litigation, they will be more likely to be forced to choose between adhering to their beliefs and losing their professional licenses. Such an interest is sufficiently direct, non-contingent, and substantial.

*Lockyer,* 450 F.3d at 441(quotation and editing marks omitted).  This interest is affected even if there is no private right of action under the federal protections. "[A] party has a sufficient interest for intervention purposes if it will suffer a practical impairment of the interests as a result of pending litigation." *Id.*

Applicants also satisfy the interest test because the order sought by Plaintiffs could expose them to criminal penalties in some jurisdictions should they refuse to perform, participate in or refer for abortions.  *See Lockyer*, 450 F.3d at 443 (criminal prosecution under California law for refusal to perform abortions a

---

[5] The Coats-Snowe Amendment prohibits any federal entity or recipients of certain federal funds from discriminating against a physician who refuses to perform abortions.

14

possibility if Weldon Amendment struck down). The Medical Applicants have a "sufficient" interest in protecting themselves from employment discrimination because of adherence to their consciences, since if a regulation that protects conscience "is declared unconstitutional or substantially narrowed as a consequence of this litigation," then medical professionals "will be more likely to be forced to choose between adhering to their beliefs and losing their professional licenses." *Lockyer*, 450 F.3d at 441.

The Medical Applicants also have an interest in this case in light of Plaintiffs' baseless allegations that medical professionals exercising their conscience place women at risk of serious injury and even death by failing to render necessary services during medical emergencies. Amd. Comp. ¶¶ 26-27, 39, 52-56. These allegations are directed towards medical professionals including the Medical Applicants' members. They should be permitted to intervene to respond to these allegations and fully develop the factual record concerning the exercise of conscience by medical professionals.

CWA has a substantial interest because its members choose medical services from providers that do not participate in abortion. This religious conviction is not only protected by the First Amendment and RFRA,[6] but CWA's members that are eligible for Medicaid also have an individual right to free choice of providers.

---

[6] *See Thomas supra* n.1, and *O'Centro*, *supra* n.2.

15

*Harris Olszewski,* 442 F.3d 456, 461 (6th Cir. 2006); *Planned Parenthood of Ind.,*

*Inc. v. Comm'r of the Ind. State Dept. of Health,* 699 F.3d 962, 974 (7th Cir. 2012)

("Medicaid patients have the right to receive care from the qualified provider of

their choice").

Since *Roe v. Wade* the federal government has enacted a host of laws that

protect the medical profession and health care entities from being required to be

involved in abortion and/or sterilization, and these laws ultimately benefit patients

by letting them continue to have the choice of health care providers that share their

respect for human life and fertility.

> ➢ 42 U.S.C. § 300a-7 (1973 and years thereafter), containing multiple protections for "religious beliefs or moral convictions" for persons and entities in the health care field;
>
> ➢ 42 U.S.C. § 2996f(b) (1974), prohibiting the use of certain funds to compel a person or entity to assist abortions against "religious beliefs or moral convictions";
>
> ➢ Title III of Division I (Department of State, Foreign Operations, and Related Programs Appropriations Act) of the Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, which has been approved in appropriations bills since 1986, prohibiting discrimination in the provision of family planning funds against applicants due to their "religious or conscientious commitment to offer only natural family planning";
>
> ➢ 20 U.S.C. §1688 (1988), blocking a federal sex discrimination law from forcing anyone to participate in an abortion for any reason;

➢ 18 U.S.C. § 3597 (1994), protecting the "moral or religious convictions" of persons who object to participating in federal executions or prosecutions;

➢ In 1994, in an attempt to pass health care reform, Senator Daniel Patrick Moynihan (D-NY) gained committee approval for and brought to the Senate floor a "Health Security Act," which protected "any employer" and any insurance company from participating in a health plan that contained abortion "or other services," if they objected to "such services on the basis of a religious belief or moral conviction";

➢ 42 U.S.C. § 238n (1996), prohibiting government discrimination against persons or entities who object to participating in abortion for any reason;

➢ 8 U.S.C. § 1182(g) (1996), protecting aliens who object to vaccinations based on "religious beliefs or moral convictions";

➢ 42 U.S.C. § 1396u-2(b)(3) (1997), protects Medicaid managed care plans from being forced to provide counseling or referral services if they have "moral or religious grounds" for objecting;

➢ 42 U.S.C. § 1395w-22(j)(3)(B) (1997), protects Medicare+Choice managed care plans from being forced to provide counseling or referral services if they have "moral or religious grounds" for objecting;

➢ Also in 1997, Senator Edward Kennedy (D-MA) sponsored the Health Insurance Bill of Rights Act of 1997 (S. 353), which allowed insurance companies to limit coverage in their plans "based on the religious or moral convictions of the issuer.";

➢ 48 C.F.R. § 1609.7001(c)(7) (1998), protects providers, health care workers, and health plan sponsoring organizations from being required to discuss treatment options if it violates their "professional judgment or ethical, moral or religious beliefs";

➢ Sec. 727 of Title VII of Division C (Financial Services and General Government Appropriations Act) of the Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, which has been approved in appropriations bills since 1999, protects religious health plans in the

17

federal employees' health benefits program from being forced to provide contraceptive coverage, and prohibits any plan in the program from discriminating against individuals who refuse to provide for contraceptives if it is contrary to the individual's "religious beliefs or moral convictions";

➢ Sec. 808 of Title VIII of Division C (Financial Services and General Government Appropriations Act) of the Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, which has been approved in appropriations bills since 2000, affirming that the District of Columbia must respect the "religious beliefs and moral convictions" of those who object to providing contraceptive coverage in health plans;

➢ 22 U.S.C. §7631(d) (2003), protects recipients of funds to combat HIV/AIDS from being required to do so in ways that are contrary to their "religious or moral objection";

➢ Sec. 507 (d) of Title V of Division F (Departments of Labor, Health and Human Services, and Education, and Related Agencies Appropriations Act) of the Consolidated Appropriations Act, 2012, Pub. L. No. 112-74, which has been approved in appropriations bills since 2004, protects persons and entities from government discrimination due to their objection to abortion for any reason;

Interpreting federal law to negate many of these conscience protections and *require* all Trinity hospitals (and effectively any other recipient of federal funds) to provide abortions as ostensibly mandated by EMTALA and the Rehabilitation Act necessarily affects the freedom of CWA members to choose providers that do not offer abortion services.

    C.    The Applicants' Interests May Be Impaired By this Litigation Because Their Ability to Protect Their Rights of Conscience Will Be Impeded.

In this Circuit, the burden of showing impairment is "minimal" and the "intervenor must show only that impairment of its substantial legal interest is *possible* if the intervention is denied." *Miller*, 103 F.3d at 1247 (emphasis added). This minimal burden can be demonstrated by showing a win by plaintiff would hinder the Applicants' ability to assert their conscience rights in future litigation. "This court has already acknowledged that potential stare decisis effects can be a sufficient basis for finding an impairment of interest." *Id. See also Atlantis Dev. v. United States*, 379 F.2d 818, 829 (5th Cir. 1967) ("stare decisis may now…supply that practical disadvantage which warrants intervention of right"); *Nuesse v. Camp,* 385 F.2d 694, 702 (D.C. Cir. 1967) (same).

In light of the interest that a professional medical association has in an action affecting the provision of medical services, it "is clear that …the association [is] so situated that the disposition of the action may as a practical matter impair or impede [its] ability to protect [its] interests." *N.Y. Pub. Interest Research Grp.*, 516 F.2d at 352; *see also Lockyer*, 450 F.3d at 442 ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it.").

Applicants easily satisfy the impairment of interests test because their members' interests in their rights protected by federal law might be impaired by

the Court's disposition of this action.  Plaintiffs effectively seek a declaratory judgment that the EMTALA and the Rehabilitation Act require any medical provider that receives federal funding to conduct abortions.  Such relief, if granted by this Court, would eliminate the conscience protections for many of the Medical Applicants' members, subjecting them to the threat of being sued by Plaintiffs (and possibly fined by governmental regulators) for not performing abortions despite their religious, moral, and ethical objections to the practice of abortion.  The threat of being subject to state or federal enforcement of laws infringing on conscience is certainly sufficient to show that the disposition of this case in favor of Plaintiffs will practically affect Applicants.  *Lockyer*, F.3d 450 at 442.

Applicants' members would suffer an impairment of their rights under the First Amendment, RFRA, Title VII, as well as the Church, Coats-Snowe, and Weldon Amendments. CWA's members would suffer a corresponding deprivation of their right to obtain medical care from a provider of their choice that does not perform abortions.

Even assuming that such an unfavorable precedent might be remedied in future litigation, a decision by this Court would substantially and detrimentally impact the Applicants' members' rights because of the stare decisis effect of a decision requiring medical professionals to perform abortions necessarily limits federal and state conscience protections. This impairment of Applicants' interest

20

clears the low bar presented by this element, since "[i]f an applicant would be substantially affected in a practical sense by the determination made in an action, [the applicant] should, as a general rule, be entitled to intervene."  Fed. R. Civ. P. 24(a)(2), Advisory Committee Note.

>    D.    Applicants Satisfy the Requirement of Showing Inadequate Representation by Defendants Because Their Unique Legal Arguments and Contribution to the Factual Record Warrant Intervention.

As the Supreme Court has stated, "[t]he requirement of the Rule [providing for intervention as of right] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). *See also Miller,* 103 F.3d at 1247 ( "[T]his burden is minimal because it is sufficient that the movant prove that representation may be inadequate" (citation, quotation, and editing marks omitted)).

In the Sixth Circuit Applicants do not have to demonstrate representation is "in fact" inadequate, and "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id.* Plaintiffs assert a right, and even an obligation under EMTALA and the Rehabilitation Act that would force the Medical Applicants' members who who work for an entity that receives federal funding to provide abortions, even if it

violates their religious, moral or ethical beliefs.  While Trinity has asserted this would violate conscience protections of the Church Amendment and the First Amendment, *see* Trinity Brief in Support of Motion to Dismiss at 18-23, it has not argued it would implicate Title VII, RFRA, or the Weldon and Coats-Snowe Amendments.   In fact there is some question whether the Coats-Snowe Amendment's prohibition on the Federal Government requiring participation in abortion even applies to Trinity's hospitals.  *See Burwell v. Hobby Lobby*, 134 S.Ct. 2751, 2795 n.15 (2014) (Ginsberg, J., dissenting). But that amendment clearly applies to individual providers like the Medical Applicants' members who should be given the opportunity to defend it.  This is especially true since Trinity only asserts the conscience rights of hospitals, not the medical professionals that work there or the individuals seeking care from them. And Trinity has not argued that the relief sought by Plaintiffs would negatively affect the rights of CWA's membership to seek medical care from the provider of their choice – one that does not participate in abortions.

Intervenors therefore bring a point of view to the litigation not presented by either the plaintiffs or the defendants.  *Lokyer*, 450 F.3d at 445 ("By making the strident argument that section 1317 is irreconcilably in conflict with the Weldon Amendment, the proposed intervenors bring a point of view to the litigation not

presented by either the plaintiffs or defendants."). As associations that are dedicated to representing the interests of pro-life healthcare professionals and those who seek care from them, Applicants are uniquely suited to give primacy to arguments that emphasize the concerns regarding conscience. Furthermore, in support of these arguments, Applicants will introduce significant factual evidence that Trinity is likely unable to produce attesting to their members' exercise of professional conscience and the impact of granting relief to Plaintiffs. See Stevens Declaration ¶¶ 4-7; Harrison Declaration ¶¶ 4-10; Ruppersberger Declaration ¶¶ 4-7; Diaz Declaration ¶¶ 7-9.

## II. IN THE ALTERNATIVE, APPLICANTS SHOULD BE GRANTED PERMISSION TO INTERVENE UNDER FED. R. CIV. P. 24(B).

Federal Rule of Civil Procedure 24(b)(1) provides, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Furthermore, "[i]n exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. Civ. R. P. 24(b)(3). Applicants satisfy the requirements for permissive intervention. As demonstrated above, the application for intervention is timely, filed just six weeks after the motion to dismiss was filed and well in advance of any hearings in the case. The Applicants' defenses and factual assertions have questions of law and fact in common with those asserted by the original parties.

23

Specifically, the Medical Applicants will seek to defend the right of healthcare providers not to participate in abortion based on numerous federal laws.  And CWA also intends to assert its members' rights to seek care from medical professionals that do not provide abortions.  These defenses arise directly from Plaintiffs' assertions in their Complaint.  Furthermore, the Applicants' members' knowledge of their own religious and ethical views concerning abortion would provide this Court a perspective it might not otherwise hear, and might aid the Court in the disposition of this case. Should the Court not grant Applicants' motion for intervention as of right, Applicants respectfully request that the Court exercise its discretion to grant them permissive intervention pursuant to Fed. R. Civ. P. 24(b).

## CONCLUSION

For the foregoing reasons, the Court should grant the Applicants' motion to intervene as of right, or in the alternative grant the Applicants' motion for permissive intervention.


DATED: This 16th day of December, 2015.


Proposed Defendant- Intervenors,

24

CATHOLIC MEDICAL
ASSOCIATION;
CHRISTIAN MEDICAL AND
DENTAL ASSOCIATION;
AMERICAN ASSOCIATION OF
PRO-LIFE OBSTETRICIANS AND
GYNECOLOGISTS; and
CONCERNED WOMEN FOR
AMERICA

/s/ Matthew S. Bowman
Matthew S. Bowman
Michigan Bar # P66239
Alliance Defending Freedom
440 First Street NW
Washington, D.C. 20001
202.393.8690
202.347.3622 (fax)
mbowman@ADFlegal.org

Kevin H. Theriot*
Arizona Bar #030446
Alliance Defending Freedom
15100 N. 90th Street
Scottsdale, AZ 85260
480.444.0020
480.444.0028 (fax)
ktheriot@ADFlegal.org

Local Counsel
Steven M. Jentzen,
MI Bar No. P29391
ATTORNEY AT LAW
106 S. Washington
Ypsilanti, MI 48197
(734) 482-5466; (734) 482-2440 Fax
smj@jentzenlaw.com
Attorneys for Defendant- Intervenors

*Notice of Appearance forthcoming

25

CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Brooke A. Merriweather-Tucker
(P79136)
Daniel S. Korobkin (P72842)
Michael J. Steinberg (P48085)
Kary L. Moss (P49759)
American Civil Liberties Union
Fund of Michigan
2966 Woodward Ave.
Detroit, MI 48201
(313) 578-6823
btucker@aclumich.org
dkorobkin@aclumich.org
msteinberg@aclumich.org


Jennifer B. Salvatore (P66640)
Cooperating Attorney, American Civil
Liberties Union Fund of Michigan
Nacht, Roumel & Salvatore, PC
101 North Main Street, Suite 555
Ann Arbor, MI 48104
(734) 663-7550
jsalvatore@nachtlaw.com
*Attorneys for Plaintiffs*
American Civil Liberties Union of
Michigan

Alexa Kolbi-Molinas
Brigitte Amiri
Jennifer Dalven
Alyson Zureick
American Civil Liberties Union
Foundation
125 Broad St., 18th Floor
New York, NY 10004
(212) 549-2633
akolbi-molinas@aclu.org
bamiri@aclu.org
jdalven@aclu.org
azureick@aclu.org
*Attorneys for Plaintiffs*
American Civil Liberties Union

26

BODMAN PLC
1901 St. Antoine St., 6th Floor at
Ford Field
Detroit, Michigan 48226
(313) 259-7777
dlevasseur@bodmanlaw.com
tvandusen@bodmanlaw.com
mserra@bodmanlaw.com
*Attorneys for Defendants*

/s/ Matthew S. Bowman
Matthew S. Bowman
Counsel for Defendant-
Intervenors