UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

A<small>MERICAN</small> C<small>IVIL</small> L<small>IBERTIES</small> U<small>NION OF</small>
M<small>ICHIGAN</small>, on behalf of its members,
and A<small>MERICAN</small> C<small>IVIL</small> L<small>IBERTIES</small> U<small>NION</small>,
on behalf of its members,

    Plaintiffs,

v.

T<small>RINITY</small> H<small>EALTH</small> C<small>ORPORATION</small>, an
Indiana corporation, and T<small>RINITY</small>
H<small>EALTH</small>-M<small>ICHIGAN</small>, a Michigan
corporation,

    Defendants,

and

C<small>ATHOLIC</small> M<small>EDICAL</small> A<small>SSOCIATION</small>, on
behalf of its members, C<small>HRISTIAN</small>
M<small>EDICAL AND</small> D<small>ENTAL</small> A<small>SSOCIATION</small>, on
behalf of its members, A<small>MERICAN</small>
A<small>SSOCIATION OF</small> P<small>RO</small>-L<small>IFE</small>
O<small>BSTETRICIANS AND</small> G<small>YNECOLOGISTS</small>,
on behalf of its members, and
C<small>ONCERNED</small> W<small>OMEN FOR</small> A<small>MERICA</small>, on
behalf of its members

    Proposed Defendant-Intervenors
                                                 /

Case No. 15-cv-12611

U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>
R. S<small>TEVEN</small> W<small>HALEN</small>

**O<small>PINION AND</small> O<small>RDER</small> G<small>RANTING</small> P<small>ROPOSED</small> D<small>EFENDANT</small>-I<small>NTERVENORS</small>'
M<small>OTION TO</small> I<small>NTERVENE</small> [24] I<small>N PART AND</small> D<small>ENYING</small> P<small>ROPOSED</small> D<small>EFENDANT</small>-
I<small>NTERVENORS</small>' M<small>OTION TO</small> I<small>NTERVENE</small> I<small>N</small> P<small>ART</small>**

## I. INTRODUCTION

The American Civil Liberties Union and the American Civil Liberties Union of Michigan (collectively "Plaintiffs") filed the instant action against Trinity Health Corporation and Trinity Health-Michigan (collectively "Defendants") on July 23, 2015. *See* Dkt. No. 1.

Currently before the Court is a Motion to Intervene [24] filed by the Catholic Medical Association, the Christian Medical and Dental Association, the American Association of Pro-Life Obstetricians and Gynecologists (collectively "Medical Applicants"), and Concerned Women for America ("CWA"). The Motion was filed on December 16, 2015.

For the reasons discussed below, the Motion to Intervene is **GRANTED IN PART**.

## II. BACKGROUND

On July 23, 2015, Plaintiffs brought the instant action against Defendants seeking declaratory and injunctive relief. *See* Dkt. No. 1. An amended complaint was filed on October 1, 2015. *See* Dkt. No. 4. Plaintiffs claim that Defendants' policy directives violate the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd ("EMTALA") and the Rehabilitation Act, 29 U.S.C. § 794 ("Rehab Act"). *Id.*

The Plaintiffs allege that the policy directives at issue in the underlying litigation prevent Defendants' participating hospitals from terminating a pregnancy, even if such act would stabilize a patient during an emergency. *Id.* at 8 (Pg. ID No. 22). In filing the action, Plaintiffs seek to enjoin Defendants from "withholding appropriate stabilizing treatment, including pregnancy termination, from women with pregnancy-related emergency medical conditions." *Id.* at 16 (Pg. ID No. 30).

The Medical Applicants represent three nonprofit organizations of Catholic, Christian, and otherwise 'pro-life' physicians and allied healthcare professionals, each with thousands of members. *See* Dkt. No. 24 at 14–17 (Pg. ID No. 368–71). All of the organizations oppose the practice of abortion, and all of the organizations have members affiliated with Defendants' hospitals. *Id.* Concerned Women for America is the largest public policy women's organization in the United States, with members from all 50 states. *Id.* at 19 (Pg. ID No. 373). "Some of CWA's members have a religious conviction to only seek healthcare from providers like Trinity hospitals that do not perform abortions." *Id.*

On December 16, 2015, the proposed intervenors filed the present motion to intervene in the litigation.

### III. LAW AND ANALYSIS

The movants argue they have a right to intervene under Rule 24(a)(2). Rule 24(a)(2) states:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The movants must satisfy the following four elements "before intervention as of right will be granted:

> 1) timeliness of the application to intervene
> 2) the applicant's substantial legal interest in the case
> 3) the impairment of the applicant's ability to protect that interest in the absence of intervention, and
> 4) inadequate representation of that interest by parties already before the court."

*Michigan State v. Miller*, 103 F.3d 1240, 1245 (6th Cir. 1997).

In the alternative, the movants argue they may intervene under Rule 24(b)(1). Rule 24(b)(1) states:

> On a timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b)(1)(B). "To intervene permissively, a proposed intervenor must establish that the motion for intervention is timely and alleges at least one common question of law or fact." *United States v. Michigan*, 424 F.3d 438, 445

(6th Cir. 2005). "Once these two requirements are established, the district court must then balance undue delay and prejudice to the original parties, if any, and any other relevant factors to determine whether, in the court's discretion intervention should be allowed." *Id.*

Here, the parties agree that the motion is timely for the purposes of both Rule 24(a) and (b).

**A. Intervention by Right**

To intervene in this action as of right, each movant must meet the requirements set out by Rule 24(a)(1). The Court, having found the Motion is timely, must look to the three remaining factors: (1) the substantial legal interest of each movant in the action, (2) whether or not the ability to protect that interest will be impaired, and (3) whether the current parties inadequately represent that interest. *Miller*, 103 F.3d at 1245.

    *a. Substantial Legal Interest*

The Sixth Circuit has "opted for a rather expansive notion of the interest sufficient to invoke intervention of right." *Id.; see also Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987) ("[T]his court has acknowledged that 'interest' is to be construed liberally."). Furthermore, an intervenor need not have the same standing necessary to initiate a lawsuit. *Id.* "The inquiry into the substantiality of the claimed interest is necessarily fact-specific." *Id.* Generally, "the rules

governing intervention are 'construed broadly in favor of the applicants.' " *Id.* at 1246 (quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995)). However, at the very least, the interest "must be significantly protectable." *Grubbs v. Norris*, 870 F.2d 343, 346 (6th Cir. 1989) (citing *Donaldson v. United States*, 400 U.S. 517, 531 (1971)).

In *Grubbs*, the Sixth Circuit held that the movant, the Metropolitan Government of Nashville, had the requisite "direct and substantial interest in the litigation" because the litigation caused the inmate population at the movant's facilities "to swell substantially beyond what it otherwise would have been . . ." *Id.* at 346–47. In other words, the litigation had a direct impact on the movant's day-to-day activities because it "materially worsen[ed] the already overcrowded conditions there" and that "is a significantly protectable interest." *Id.*

The Sixth Circuit has also indicated that "public interest groups who are regulated by the new law, or, similarly, whose members are affected by the law, may likely have an ongoing legal interest in its enforcement after it is enacted." *Northland Family Planning Clinic, Inc., v. Cox*, 487 F.3d 323, 345 (6th Cir. 2007) (citing *Grutter v. Bollinger*, 188 F.3d 394, 401 (6th Cir. 1999) (finding that proposed intervenors, who were applicants to University of Michigan, had a substantial legal interest in the school's admissions process)).

i. The Medical Applicants

The Medical Applicants each have members that work at Trinity hospitals who are governed by Trinity's directives. Dkt. No. 24 (Exhibit A, B, and C). The Medical Applicants represent more than just policy advocates. As was the case in *Cox*, the Medical Applicants are groups "whose members are affected" by the policy. *Cox*, 487 F.3d at 345.

In *Cox*, a public interest group moved to intervene in a lawsuit filed by a healthcare clinic to prevent the enforcement of a law that banned partial-birth abortions. *Id.* at 327. The Sixth Circuit re-affirmed the principal in *Miller* that "rules governing intervention are 'construed broadly in favor of the applicants.' " *Id.* at 344 (quoting *Miller*, 103 F.3d at 1245). The Sixth Circuit further noted that if "the statute regulated [the public interest group] or its members, [they] would likely have a legal interest, much like the intervenors in *Grutter* who were applicants to the University of Michigan." *Id.* at 345.

Here, the Medical Applicants represent members that are affected by the policy directives of the Defendants' hospitals on a daily basis. The outcome of the litigation could have an effect on the day-to-day aspect of their duties as healthcare professionals. Accordingly, finding that the Medical Applicants are regulated by the policy directives at issue, the Medical Applicants are able to intervene as of right.

ii. Concerned Women for America

The CWA argues that they have a substantial interest in the litigation because "its members choose medical services from providers that do not participate in abortion." Dkt. No. 24 at 26 (Pg. ID No. 380). This argument is without merit. At a fundamental level, the argument confuses the scope of the proposed 'right' that is at stake for the CWA. The applicants have, as all citizens do, a right to choose their healthcare provider. However, the right to choose a provider does not guarantee that their ideal physician of choice must be provided to them. *See generally Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 887 (1992) (finding that the right of choice does not grant a constitutional right to the chosen "on demand.").

While the CWA's members have a right to search for health care providers that do not provide abortions, they do not have a protectable interest in maintaining a health care provider's policy directives. Should Trinity Health choose to renounce its religious affiliation and voluntarily begin to allow abortions to be provided as a service, the CWA would not have a cause of action for a violation of its right to an abortion-free healthcare provider. However, this is the principle the Court would necessarily be adopting should CWA's argument be accepted.

The applicants provide sixteen examples of federal legislation they assert to be illustrative of Congress's intent to protect a patient's ability to choose a health

care provider that does not provide abortions. *See* Dkt. No. 24 at 27–29 (Pg. ID No. 381–83). However, not one of these examples can change the fact that the argument, when distilled, represents nothing more than an ideological opposition to Plaintiffs' action. The Sixth Circuit has made clear that where "an organization has only a general ideological interest in the lawsuit . . . and the lawsuit does not involve the regulation of the organization's conduct . . . such an organization's interest in the lawsuit cannot be deemed substantial." *Coalition to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 782 (6th Cir. 2007). Accordingly, the CWA may not intervene as of right.

### b. *Impairment of Interest*

"To satisfy this element of the intervention test, a would-be intervenor must show only that impairment of its substantial legal interest is possible if intervention is denied." *Miller*, 103 F.3d at 1247. "This burden is minimal." *Id.*

As noted above, the Medical Applicants have an interest in the continued enforcement of the hospital policy. The policy directives regulate their day-to-day decisions and activities. Should Plaintiffs prevail, the litigation would result in the termination of some of those policy directives. Denying the Medical Applicants the ability to intervene would prevent them from protecting that interest. Accordingly, this prong of the analysis has been satisfied.

### c. Inadequate Representation

"Although a would-be intervenor is said to shoulder the burden with respect to establishing that its interest is not adequately protected by the existing parties to the action, this burden 'is minimal because it is sufficient that the movant[ ] prove that representation may be inadequate.' " *Miller*, 103 F.3d at 1247 (quoting *Linton by Arnold v. Commissioner of Health and Environment, State of Tenn.*, 973 F.2d 1311, 1319 (6th Cir. 1992)). "One is not required to show that the representation will in fact be inadequate." *Id.* In *Miller*, the Sixth Circuit found that "it may be enough to show that the existing party who purports to seek the same outcome will not make all of the prospective intervenor's arguments." *Id.* This is a low bar.

Here, the Defendants and the Medical Applicants are situated differently. Because Medical Applicants represent individual healthcare providers, they may be able to present different arguments to protect their specific interests in the litigation. Furthermore, Defendants and Medical Applicants stand in disagreement over whether or not the Medical Applicants' members may be forced to perform abortions. *Compare* Dkt. No. 24 at 22–23 (Pg. ID No. 376–77) *with* Dkt. No. 15 at 21 (Pg. ID No. 121). This difference signals to the Court that Defendants do not intend to make the same arguments proposed by the Medical Applicants. Accordingly, this final prong has been satisfied and the Medical Applicants may intervene as of right.

## B. Permissive Intervention

The decision to grant permissive intervention rests with the discretion of the Court. *American Special Risk Ins. Co. ex rel. South Macomb Disposal Authority v. City of Centerline*, 69 F. Supp. 2d 944, 955 (E.D. Mich. 1999). "In exercising its discretion, the court shall consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b)(3). In order to intervene permissively, the proposed intervenor must establish at least one common question of law or fact. *Michigan*, 424 F.3d at 445.

As stated above, the Medical Applicants have demonstrated that they have an interest in the current litigation. Whether the Defendants' policy directives are in violation of EMTALA or the Rehab Act presents a question of law common to the action. The Court finds that even if Medical Applicants could not intervene as of right, they may be permitted to intervene under Fed. R. Civ. P. 24(b)(3).

On the other hand, as stated above, the CWA has not demonstrated that there are common questions of law or fact. Furthermore, because the CWA members are not regulated by the policy directives at issue, the Court believes that allowing the CWA to intervene would only serve to unnecessarily complicate the management of the case, causing undue delay. Accordingly, permissive intervention will not be granted to the CWA.

## V. CONCLUSION

For the reasons discussed above, the Motion to Intervene [24] is **GRANTED IN PART** and **DENIED IN PART**.

IT IS HEREBY ORDERED that the Catholic Medical Association, the Christian Medical and Dental Association, and the American Association of Pro-Life Obstetricians and Gynecologists may be allowed to intervene in the action.

IT IS FURTHER ORDERED that the Concerned Women for America may not intervene in the present action.

Dated: March 10, 2016  /s/Gershwin A Drain
Detroit, MI  HON. GERSHWIN A. DRAIN
  United States District Court Judge