UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN CIVIL LIBERTIES UNION, on behalf of its members, and AMERICAN CIVIL LIBERTIES UNION of MICHIGAN, on behalf of its members,

Plaintiffs,

v.

TRINITY HEALTH CORPORATION, an Indiana corporation, *et al.*,

Defendants.

Case No. 15-cv-12611

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
R. STEVEN WHALEN

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [15]**

**I. INTRODUCTION**

The American Civil Liberties Union of Michigan commenced this action, on behalf of their members, on July 23, 2015 against Trinity Health Corporation and Trinity Health-Michigan ("Defendants"). *See* Dkt. No. 1. On October 1, 2015, Plaintiffs filed an Amended Complaint adding the American Civil Liberties Union ("ACLU") as a Plaintiff. *See* Dkt. No. 4. Currently before the Court is Defendants' Motion to Dismiss. *See* Dkt. No. 15. This matter is fully briefed. The Court held a hearing on April 7, 2016, and heard oral argument on the motion. For the reasons discussed below, the Motion will be **GRANTED**.

## II. BACKGROUND

Defendant Trinity Health Corporation is the parent corporation of a Catholic health care system, which includes hospitals in multiple states. Dkt. No. 15 at 13 (Pg. ID No. 113). Among the purposes of Trinity Health Corporation is carrying out the healthcare mission of Catholic Health Ministries on behalf of and as an integral part of the Roman Catholic Church in the United States. *Id.* Trinity Health-Michigan is a subsidiary of Trinity Health Corporation that owns and operates Catholic hospitals and provides other health care services in the state of Michigan. *Id.*

The Defendants Trinity Health Corp. and Trinity Health-Michigan adhere to a policy known as the Ethical and Religious Directives for Catholic Health ("Directives"), published by the United States Conference of Catholic Bishops ("USCCB"). *Id.* Directive 45 states: "Abortion (that is, the directly intended termination of pregnancy before viability or the directly intended destruction of a viable fetus) is never permitted." *Id.* at 14 (Pg. ID No. 114).

The ACLU and the ACLU of Michigan (collectively "Plaintiffs") are membership organizations with members in every state where a Defendant hospital with an emergency department is located. Amended Complaint ¶¶ 7, 9. The members include women in those states who are currently pregnant, have been pregnant in the past, and may become pregnant in the future. *Id.* ¶¶ 8, 10, 38, 41–

42. At least one of Plaintiffs' members has suffered emergency complications during her pregnancy that required the termination of her pregnancy in order to stabilize her condition.

Plaintiffs allege that women—including at least one of Plaintiffs' members—have suffered severe harm as a result of Defendants' adherence to the Directives. Furthermore, Plaintiffs allege that women—including at least one member who is currently pregnant—are at risk of suffering similar harm should their pregnancies suffer complications in the future.

The Plaintiffs seek declaratory judgment that Defendants' adherence to the Directives is in violation of the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794(a). Plaintiffs further seek injunctive relief to prevent Defendants from further adherence to the Directives that allegedly stand at odds with federal statutory law. Defendants argue that Plaintiffs lack standing and have failed to state a claim under the statutes.

### III. LEGAL STANDARD

Defendants argue that the Plaintiffs lack standing, and thus the Court does not have subject matter jurisdiction, under Federal Rule of Civil Procedure 12(b)(1). The Defendants have also raised additional challenges pursuant to Federal Rule of Civil Procedure 12(b)(6). However, the Court is "bound to

consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990). "Where the subject matter jurisdiction is challenged pursuant to [Rule 12(b)(1)], the plaintiff has the burden of proving jurisdiction in order to survive the motion." *General Retirement System of City of Detroit v. Snyder*, 822 F. Supp. 2d 686, 693 (E.D. Mich. 2011).

"Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). Whereas a facial attack is a challenge to the sufficiency of the pleading itself, a factual attack challenges the factual existence of subject matter jurisdiction. *Id*. Where the motion makes a facial attack, the court must construe the petition's allegations in the light most favorable to the non-moving party and take the material allegations as true. *Id*. Conversely, on a factual attack, there is no presumption of truthfulness applied to factual allegations, allowing the court to "weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id*.

Here, Defendants are making a facial attack to the sufficiency of the pleadings. Therefore, the presumption of truthfulness applies to the allegations in the complaint and the Court will view all factual disputes in the light most favorable to the Plaintiffs.

## IV. DISCUSSION

"Article III of the Constitution limits the jurisdiction of federal courts to '[c]ases' and '[c]ontroversies.'" *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014). "In an attempt to give meaning to Article III's 'case or controversy' requirement, the courts have developed a series of principles termed 'justiciability doctrines.'" *National Rifle Assoc. of America v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). Those doctrines include both standing and ripeness. *Snyder*, 822 F. Supp. 2d at 693.

### A. Article III Standing

"Before bringing a case in federal court, a plaintiff must establish standing to do so." *Klein v. U.S. Dept. of Energy*, 753 F.3d 576, 579 (6th Cir. 2014). The law of Article III standing "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* (citing *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1146 (2013)).

Plaintiffs have brought this lawsuit in representative capacity on behalf of their members. "An association has standing to bring suit on behalf of its members when its members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in

the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 181 (2000).

"To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likelihood' that the injury 'will be redressed by a favorable decision.' " *Susan B. Anthony List*, 134 S.Ct. at 2341 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

### a. Injury In-Fact

"An injury sufficient to satisfy Article III must be 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.' " *Id.* (quoting *Lujan*, 504 U.S. at 560). "An allegation of future injury may suffice if the injury is 'certainly impending,' or there is a 'substantial risk that the harm will occur.' " *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138, 1148 (2013)).

Plaintiffs argue two theories of standing: (1) at least one of Plaintiffs' members was denied appropriate treatment under EMTALA and the Rehab Act at Defendants' hospitals as a result of the Directives, consequently suffering severe injury; and (2) at least one member, who was pregnant at the time the case was filed, had a history of severe pregnancy complications requiring the directly intended termination of the pre-viability pregnancy, and feared she would be

unable to get the care she needed if she once again experienced complications. Dkt. No. 32 at 15 (Pg. ID No. 435).

In response, Defendants argue that the Plaintiffs have failed to plead any past harm suffered with sufficient particularity to gain standing. Dkt. No. 15 at 19 (Pg. ID No.) ("Here, the amended complaint does not identify any individual that suffered an injury, what that injury was, where or when the injury occurred, or how EMTALA and/or the Rehabilitation Act were violated."). Further, Defendants argue that any alleged future harm is too speculative to gain standing in the present matter as of yet. *Id.*

### i. Plaintiffs' First Theory of Standing

Plaintiffs argue that "[c]ontrary to what Defendants assert in their brief, Plaintiffs have alleged numerous past incidents where women (including at least one of Plaintiffs' members) were denied appropriate treatment" under EMTALA and the Rehab Act. Dkt. No. 32 at 15 (Pg. ID No. 435). In the Amended Complaint, Plaintiffs allege that

> [a]t least one of Plaintiffs' members has already been denied stabilizing treatment (termination of the pregnancy) at one of Defendants' hospitals, in violation of EMTALA, solely because that treatment conflicted with the Directives.

Amended Complaint at 9, ¶ 38. The Amended Complaint alleges a violation of the Rehab Act with near identical phrasing. *See* Amended Complaint at 13, ¶ 64.

"At the pleadings stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.' " *Lujan*, 504 U.S. at 561 (quoting *Lujan v. National Wildlife Federation*, 497 U.S. 871, 889 (1990)). However, " '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.' " *Lujan*, 504 U.S. at 564 (quoting *Los Angeles v. Lyon*, 461 U.S. 95, 102 (1983)); *see Fieger v. Ferry*, 471 F.3d 637, 643 (6th Cir. 2006) ("In the context of a declaratory judgment action, allegations of past injury alone are not sufficient to confer standing. The plaintiff must allege and/or 'demonstrate actual present harm or a significant possibility of future harm.' ") (quoting *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998)).

Here, Plaintiffs request declaratory and injunctive relief. *See* Amended Complaint at 16. Therefore, even assuming that the complaint contains sufficient factual matter to establish past actual harm—considering the vagueness of the allegation, this is dubious—the allegations of past exposure to Defendants' illegal conduct is not sufficient to create standing.

> ii. Plaintiffs' Second Theory of Standing

Plaintiffs next argue that at least one member "was pregnant at the time the case was filed, had a history of severe pregnancy complications requiring the directly intended termination of a pre[-]viability pregnancy . . . lives in a county where the only hospital was a Trinity Hospital, and feared she would be unable to get the care she needed if she once again experienced complications." Dkt. No. 32 at 15 (Pg. ID No. 435); Amended Complaint at 10, ¶ 43. The Amended Complaint also includes a similar passage with regards to the Rehab Act. Amended Complaint at 14, ¶ 66. These are allegations of future harm.

Defendants argue that the allegations are too speculative to be considered injury in-fact. In response, Plaintiffs rely on *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) for the proposition that a harm that has yet to materialize against an unidentified member, "does not transform this Article III injury into non-cognizable speculation." Dkt. No. 32 at 16 (Pg. ID No. 436). However, Plaintiffs reliance on *Sandusky* is misplaced.

In *Sandusky*, the Sixth Circuit held that the Sandusky Democratic Party and several labor unions had standing to bring a prospective claim for their members' voting rights even though they had "not identified specific voters who will seek to vote at a polling place that will be deemed wrong by election workers . . . ". *Id.* at

-9-

574. The Court of Appeals held that the harms, resulting from human error, were "inevitable . . . not speculative or remote; they are real and imminent." *Id.*

The concept of "imminence" distinguishes this case from that of *Sandusky*. Plaintiffs assert that

> [g]iven the concreteness of the threat posed to Plaintiffs' pregnant member, coupled with the fact that all of Defendants' hospitals adhere to the Directives; and the biological inevitability that women will continue to become pregnant and that some of those women will experience complications that require the direct termination of their pregnancy prior to viability, Plaintiffs' allegations are sufficient to show Article III injury.

Dkt. No. 32 at 17–18 (Pg. ID No. 437–38). But this "inevitability" is only true given an indefinite (if not an infinite) timeline and membership list. Unlike *Sandusky*, where voting dates were fixed, there is no telling when Plaintiffs' members are to suffer this harm. Plaintiffs' complaint has only presented the Court with a mathematical probability of harm. Furthermore, the risk of Plaintiffs' lone pregnant member experiencing severe complications from her pregnancy does not rise to the level of inevitability displayed in *Sandusky*. *Sandusky* involved the inevitable likelihood that one of thousands of voters would be accidentally identified as a non-resident, and mistakenly turned away from their polling place by a volunteer on voting day. *Sandusky*, 387 F.3d at 574. In this case, Plaintiffs cannot guarantee that their pregnant member will experience complications,

choose to get treated at Defendants' hospitals,[1] or even require hospitalization. They have plead no facts, nor brought any supplemental evidence to explain why this member in particular faces a substantial risk of having pregnancy complications. Given the events that must materialize, her risk of harm, as currently plead, cannot be characterized as "certainly impending." *Clapper*, 133 S.Ct. at 1148.

### B. Article III Ripeness

Plaintiffs also request declaratory judgment. "Declaratory judgments are typically sought before a completed 'injury in-fact' has occurred, but must be limited to the resolution of an 'actual controversy.' " *Snyder*, 822 F. Supp. 2d at 693 (quoting *National Rifle Assoc. of America*, 132 F.3d at 279).

"When seeking declaratory relief, a plaintiff 'must show actual present harm or a significant probability of future harm in order to demonstrate the need for pre-enforcement review.' " *Id.* at 694. " 'Ripeness requires that the 'injury in-fact be certainly impending' and 'separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review.' " *Id.* (quoting *National Rifle Assoc. of America*, 132 F.3d at 280).

---

[1] Plaintiffs do make note that the only hospital in her county is owned by Defendants, but this does not discount the possibility that she may move, or may go into labor while in another county etc.

When challenging a health policy or statute, the Supreme Court has required "a showing that 'in discrete and well-defined instances a particular condition has or is likely to occur in which the procedure prohibited by the Act must be used.' " *Gonzales v. Carhart*, 550 U.S. 124, 167 (2007). In this context, the Plaintiff should identify "discrete factual circumstances" that are detailed by medical records or other similarly concrete evidence. *Planned Parenthood Southwest Ohio Region v. DeWine*, 64 F. Supp. 3d 1060, 1067 (S.D. Ohio 2014).

At issue in *DeWine* was an Ohio law that banned physicians from administering or prescribing mifepristone to induce an abortion after the 49th day of pregnancy. *Id.* at 1062. The Plaintiffs argued that the restriction was unconstitutional due to its failure to include an exception allowing mifepristone abortions where necessary to protect a woman's life or health. *Id.* at 1063. The Plaintiffs identified certain medical conditions—such as large uterine fibroids and cervical stenosis—that would require the use of the banned protocol, else the patients would have to undergo riskier surgical abortions. *Id.* at 1067. The *DeWine* court noted that both parties were able to articulate discrete instances in which an off-label mifepristone abortion may be medically necessary. *Id*. Furthermore, the *DeWine* court noted that "the articulated circumstances are not hypothetical, as Plaintiffs have alleged and the record includes testimony that they have patients

with the specified conditions." *Id.* As a result, the *DeWine* court held that the claim was ripe under *Gonzales*. *Id.* at 1068.

Here, Plaintiffs have not identified similar circumstances. Plaintiffs have not explained what medical conditions would place their members at risk, or if any of their members have such a condition that would place them at risk. They have only alleged that one of their members was pregnant at the time the claim was filed, and that other members will likely become pregnant in the future. Obviously, pregnancy alone is not a "particular condition" that requires the termination of said pregnancy. To find the claim to be ripe for review on the facts pleaded before this Court would be to grant a cause of action to every pregnant woman in the state of Michigan upon the date of conception. Accordingly, the alleged harm has not risen beyond a speculative nature and is not ripe for review.

Having found that there is no subject matter jurisdiction, the Court declines to address the Defendants' Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

## V. CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss [15] is **GRANTED**.

IT IS SO ORDERED.

Dated: April 11, 2016           /s/Gershwin A Drain
Detroit, MI                     HON. GERSHWIN A. DRAIN
                                United States District Court Judge