IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN CIVIL LIBERTIES UNION,
on behalf of its members, and AMERICAN
CIVIL LIBERTIES UNION of MICHIGAN,
on behalf of its members,

                Plaintiffs,

vs.

TRINITY HEALTH CORPORATION, an
Indiana corporation, and TRINITY
HEALTH – MICHIGAN, a Michigan
corporation,

                Defendants,

and

CATHOLIC MEDICAL ASSOCIATION,
on behalf of its members, CHRISTIAN
MEDICAL and DENTAL ASSOCIATION,
on behalf of its members, and AMERICAN
ASSOCIATION OF PRO-LIFE
OBSTETRICIANS AND
GYNECOLOGISTS, on behalf of its
members,

                Defendant-Intervenors.

                Hon. Gershwin A. Drain

                Case No. 15-cv-12611

## PLAINTIFFS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND COMPLAINT

Plaintiffs American Civil Liberties Union ("ACLU") and American Civil Liberties Union of Michigan ("Michigan ACLU"), through their attorneys, submit this Motion for Reconsideration pursuant to E.D. Mich. L.R. 7.1(h) to correct the

palpable defects in this Court's April 11, 2016 opinion dismissing this action for lack of standing. In the alternative, Plaintiffs move for leave to amend their complaint pursuant to Fed. R. Civ. P. 15(a), to allege their basis for standing with more specificity. In support of this Motion, Plaintiffs respectfully refer the Court to their Brief in support filed herewith.

Although Plaintiffs sought concurrence from the Defendants and Defendant-Intervenors prior to filing this motion as required by E.D. Mich. L.R. 7.1(a), neither party consented.

Wherefore, Plaintiffs respectfully request that this Court grant their motion and reconsider its April 11, 2016 opinion, or, in the alternative, allow Plaintiffs to file a Second Amended Complaint.

Respectfully Submitted,

| | |
|---|---|
| /s/ Brooke A. Merriweather-Tucker | /s/ Alexa Kolbi-Molinas |
| Brooke A. Merriweather-Tucker (P79136) | Alexa Kolbi-Molinas |
| Daniel S. Korobkin (P72842) | Brigitte Amiri |
| Michael J. Steinberg (P43085) | Jennifer Dalven |
| Kary L. Moss (P49759) | Alyson Zureick |
| American Civil Liberties Union  Fund of Michigan | American Civil Liberties Union  Foundation |
| 2966 Woodward Ave. | 125 Broad St., 18th Floor |
| Detroit, MI 48201 | New York, NY 10004 |
| (313) 578-6823 | (212) 549-2633 |
| btucker@aclumich.org | akolbi-molinas@aclu.org |
| | |
| Jennifer B. Salvatore (P66640) | *Attorneys for Plaintiff* |
| Cooperating Attorney, American Civil Liberties Union Fund of Michigan | *American Civil Liberties Union* |
| Salvatore Prescott, PLLC | |

105 E. Main Street
Northville, MI 48167
(248) 679-8711
salvatore@salvatoreprescott.com

*Attorneys for Plaintiff American Civil Liberties Union of Michigan*

Dated: April 25, 2016

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

AMERICAN CIVIL LIBERTIES UNION,
on behalf of its members, and AMERICAN
CIVIL LIBERTIES UNION of MICHIGAN,
on behalf of its members,

        Plaintiffs,

vs.

TRINITY HEALTH CORPORATION, an
Indiana corporation, and TRINITY
HEALTH – MICHIGAN, a Michigan
corporation,

        Defendants,

and

CATHOLIC MEDICAL ASSOCIATION,
on behalf of its members, CHRISTIAN
MEDICAL and DENTAL ASSOCIATION,
on behalf of its members, and AMERICAN
ASSOCIATION OF PRO-LIFE
OBSTETRICIANS AND
GYNECOLOGISTS, on behalf of its
members,

        Defendant-Intervenors.

_____/

Hon. Gershwin A. Drain

Case No. 15-cv-12611

## BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, FOR LEAVE TO AMEND COMPLAINT

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT ........................................................................................................3

I. The Court's Standing Analysis Contains Palpable Defects that Warrant Reconsideration. ...................................................................................................3

    A. Requiring Plaintiffs Who Have Experienced Past Harm to Prove the Inevitability of Future Harm Is a Clear Misstatement of Sixth Circuit Law ..4

    B. Failing to Consider the Distinct Standing Inquiry for Plaintiffs' Rehabilitation Act Claim is an Obvious Mistake. ..........................................7

II. This Court Should Grant Plaintiffs Leave to Amend the Complaint if Reconsideration is Not Granted. ..............................................................................10

CONCLUSION ....................................................................................................12

CERTIFICATE OF SERVICE ..............................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Cleveland Branch, N.A.A.C.P. v. City of Parma, OH*, 263 F.3d 513 (6th Cir. 2001) ..............................................................................................................11

*Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576 (6th Cir. 2014) ....... 7, 8, 10

*General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119 (6th Cir. 1990) ..................10

*Kiser v. Reitz*, 765 F.3d 601 (6th Cir. 2014) .........................................................5, 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .................................................6

*MX Grp., Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002) ...........................7

*Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133 (9th Cir. 2002) ....................8

*Salser v. Dyncorp Int'l., Inc.*, No. 12-10960, 2015 WL 6865951 (E.D. Mich. Nov. 9, 2015) ……………………………………………………………..3, 7

*Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) .....4

*Spees v. James Marine, Inc.*, 617 F.3d 380 (6th Cir. 2010) ......................................9

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) .....................................5

**Rules**

E.D. Mich. Local Rule 7.1 ........................................................................................3

Federal Rule of Civil Procedure 15 ........................................................................10

**Other Authorities**

*ACOG Practice Bulletin on Early Pregnancy Loss,* http://www.acog.org/Resources-And-Publications/Practice-Bulletins/Committee-on-Practice-Bulletins-Gynecology/Early-Pregnancy-Loss .............................5,11

*Pregnancy After Miscarriage: What You Need To Know*,
http://www.mayoclinic.org/healthy-lifestyle/getting-pregnant/in-depth/pregnancy-after-miscarriage/art-20044134 .................................................... 5

# INTRODUCTION

It is the official policy of hospitals owned and operated by Defendants Trinity Health and Trinity Health – Michigan to deny women experiencing miscarriage, and other pregnancy complications, the full range of information and treatment options that the women need to protect their health, as required by federal law.  As a result, several women who sought treatment from the Defendants' hospitals have been severely harmed, including one of Plaintiffs' members.

Because of the high rate of miscarriage among pregnant women, and the large number of hospitals owned and operated by Defendants, it is highly likely that at least one of the thousands of women in Plaintiffs' membership will be harmed again by Defendants' policies.  Indeed, this cause of action is based in large part on one of Plaintiffs' members' injury.  This member was denied emergency treatment by one of Defendants' hospitals while miscarrying, and she became pregnant again and lived in a county where the sole emergency-care option was at one of Defendants' facilities.

Understandably, this member suffered great fear and distress at the prospect of returning to Defendants' facility for emergency miscarriage-related care, which, given her medical history, she was at substantial risk of needing.  Accordingly,

Plaintiffs filed suit on her behalf, as well as their thousands of other members at risk of harm, to ensure that she and other similarly situated women would receive the proper care mandated by federal law.

In dismissing Plaintiffs' complaint, this Court committed a clear and plain legal error by applying the wrong legal standard for claims seeking injunctive relief. Under the longstanding legal standard mandated by Sixth Circuit law, injunctive relief to prevent future harm is available if the plaintiff, or one of plaintiff's members, is at substantial risk of harm. However, this Court applied a different standard, requiring Plaintiffs to demonstrate that the feared harm was absolutely certain to occur, or inevitable. Because there is no way to predict the future with such certainty, such a high standard has never been required by the Sixth Circuit where the plaintiff has experienced past harm, and this Court's use of such a standard is plain error.

Additionally, the Court failed to analyze Plaintiffs' standing to pursue their Rehabilitation Act claim under the distinct analysis implemented by the Sixth Circuit, and other courts, for federal disability claims. That standard requires only that a plaintiff demonstrate past harm from the defendant's failure to comply with federal disability law, and a plausible intent to return to the defendant's facility, or deterrence from returning because the non-compliant policy remains in effect. When, as here, a disabled plaintiff is compelled to return to the defendant's facility

2

because no other option for care is available, and there is no dispute that the non-compliant policy remains, there is no question that this standard has been met.

These defects in the court's April 11, 2016 opinion, when corrected, would compel the different conclusion that Plaintiffs have adequately demonstrated standing to pursue their claims for injunctive relief. Accordingly, Plaintiffs' motion for reconsideration should be granted.

In the alternative, Plaintiffs seek leave to amend their complaint to provide more detailed allegations that conclusively demonstrate why their members face substantial risk of harm from Defendants' policies.

## ARGUMENT

**I.   The Court's Standing Analysis Contains Palpable Defects that Warrant Reconsideration.**

Under Local Rule 7.1(h), motions for reconsideration may be granted where the movant demonstrates "a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled" and "correcting the defect will result in a different disposition of the case." E.D. Mich. L.R. 7.1(h)(3). "[A] 'palpable defect' . . . is a defect which is obvious, clear, unmistakable, manifest or plain." *Salser v. Dyncorp Int'l., Inc.*, No. 12-10960, 2015 WL 6865951, at *1 (E.D. Mich. Nov. 9, 2015).

### A. Requiring Plaintiffs Who Have Experienced Past Harm to Prove the Inevitability of Future Harm Is a Clear Misstatement of Sixth Circuit Law.

In its opinion, the Court stated that Plaintiffs lacked standing to pursue injunctive relief on behalf of their members because Plaintiffs failed to demonstrate that the prospective harm was "inevitable." Dist. Ct. Op., Dkt. # 44, at 10. To support its reasoning, the court cited *Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565, 574 (6th Cir. 2004), where the Sixth Circuit found that the plaintiff organizations had standing to challenge a new voting procedure because the alleged prospective harms were "inevitable . . . not speculative or remote; they are real and imminent."

The quoted language in *Sandusky* regarding "inevitability," however, arose out of a unique context where, unlike here, the plaintiffs did not suffer past harm. The plaintiffs in *Sandusky* challenged a new voting process, and alleged that the not-yet-implemented process would harm voters in the future by restricting their ability to cast a provisional ballot. Therefore, in the context of a case where no past harm could exist, the court pointed out that the harm was "inevitable."

The *Sandusky* court's statement regarding "inevitability" did not create a new standing requirement for plaintiffs who allege past harm. Rather, where past harm is alleged, the Sixth Circuit has consistently found standing "if the threatened injury is certainly impending, *or there is a substantial risk that the harm will*

4

*occur.*" *Kiser v. Reitz*, 765 F.3d 601, 607-08 (6th Cir. 2014) (quoting *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014)) (emphasis added).

As Plaintiffs alleged in their Amended Complaint, at least one of their members has a history of multiple pregnancy complications and has suffered past harm at Defendants' hospital while miscarrying. Am. Compl. ¶¶ 1, 4, 5, 38. Plaintiffs have also alleged that, at the time of filing, this member was pregnant, and would have no choice but to go to one of Defendants' hospitals in an emergency situation. *Id.* ¶¶ 8, 10, 41. Further, the risk of such an emergency recurring was substantial: one of "[t]he most common risk factors identified among women who have experienced early pregnancy loss [is] . . . a prior early pregnancy loss." *ACOG Practice Bulletin on Early Pregnancy Loss,* http://www.acog.org/Resources-And-Publications/Practice-Bulletins/Committee-on-Practice-Bulletins-Gynecology/Early-Pregnancy-Loss (last visited April 25, 2016) (Exhibit A). The nationally renowned Mayo Clinic explains that "[a]fter two miscarriages the risk of another miscarriage increases to about 26 percent, and after three miscarriages the risk of another miscarriage is about 28 percent." *Pregnancy After Miscarriage: What You Need To Know*, http://www.mayoclinic.org/healthy-lifestyle/getting-pregnant/in-depth/pregnancy-after-miscarriage/art-20044134 (last visited April 25, 2016) (Exhibit B).

Given the allegations in Plaintiffs' complaint, the prospect of future harm for their member clearly falls into the category of substantial risk of harm that the Sixth Circuit has consistently held is sufficient to demonstrate standing, and is not the type of "hypothetical" risk that courts have deemed insufficient.[1] *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563-64 (1992) (finding plaintiff organization lacked standing to challenge anticipated environmental harm at a recreational area that its members had visited in the past, but had no specified timeframe for returning to in the immediate future). Further, contrary to the Court's opinion, the law does not require Plaintiffs' member to wait until she miscarries again and is in need of immediate emergency treatment to file a claim that could not be adjudicated until the harm has already occurred. Rather, by allowing individuals who have been harmed in the past to obtain injunctive relief when they are at *risk* of suffering the same harm again, the law affords the opportunity to prevent the harm from recurring, as Plaintiffs sought to do here.

In sum, Plaintiffs have alleged that Defendants have a policy that prohibits women experiencing miscarriage from receiving treatment required by federal law. Am. Compl. ¶¶ 28-33, 36, 56-57. It is therefore not conjecture that, if Plaintiffs' identified member sought help from Defendants' hospital for miscarriage-related

---

[1] In the alternative, as discussed *infra* Section II, Plaintiffs seek leave to amend their complaint to allege with greater specificity that a history of prior miscarriages significantly increases the chance of future miscarriages.

6

care, she would have been harmed. Given this member's medical history, which places her at substantial risk of another miscarriage, her lack of alternatives for emergency care other than Defendants' hospital, and the fact that the harm she faced was imminent given the short duration of pregnancy and the urgent nature of emergency care, there is no question that she was at substantial risk of harm by Defendants, and therefore Plaintiffs satisfy the Sixth Circuit's requirements for standing. *See Kiser*, 765 F.3d at 607-08. The Court's decision to the contrary is a plain mistake of law that should be reconsidered and corrected.

### B. Failing to Consider the Distinct Standing Inquiry for Plaintiffs' Rehabilitation Act Claim is an Obvious Mistake.

In addition to imposing a more stringent requirement for standing than the law requires, this Court also failed to consider the distinct standing analysis required in the Sixth Circuit for federal disability law claims.[2]

As Plaintiffs set forth in their brief opposing Defendants' motion to dismiss, the Sixth Circuit has distinguished the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) from other types of claims in establishing pleading requirements for injunctive relief.[3] *See* Pls.' Opp'n to Mot. to Dismiss, Dkt. # 32, at 10 n.5. (citing *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 580 (6th

---

[2] Failure to consider and rule on an issue raised by a party that is relevant to the legal analysis is grounds for reconsideration. *Salser*, No. 12-10960, 2015 WL 6865951, at *2.

[3] The Sixth Circuit has explained that the analysis for the ADA and the RA are the same. *MX Grp., Inc. v. City of Covington*, 293 F.3d 326, 332 (6th Cir. 2002).

Cir. 2014)).  To obtain injunctive relief under the RA, a disabled individual who has been previously harmed by a public accommodation's failure to comply with the RA need not engage in the futile gesture of returning to that accommodation if the non-compliant policy remains in effect.  Rather, such a disabled individual need only assert a "plausible intent to return to the non-compliant accommodation" *or* that the disabled individual "would return, but is deterred from visiting the non-compliant accommodation because of the alleged accessibility barriers."  *Id.* at 580.  A plaintiff's allegation that he or she would return to the accommodation but genuinely fears being unable to obtain full access to its facilities is sufficient to demonstrate deterrence.  *See id.*

For example, in *Gaylor*, the Sixth Circuit determined that a disabled plaintiff who had previously been unable to access facilities at a shopping center located in a different state from where he resided had standing to bring a challenge for injunctive relief.  Although the plaintiff's future use of the center was not "inevitable" given his residency in a different state, the court found that the plaintiff's allegations that he had a history of visiting the center, and plausibly intended to return to the center, but was deterred from returning because he feared being unable to access its facilities, were sufficient to bring a claim for injunctive relief.  *Id.*  at 580-81.

8

As Plaintiffs cited in their brief, this reasoning is also in accord with other circuits. *See* Pls.' Opp'n to Mot. to Dismiss, Dkt. # 32, at 10 n.5. In *Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002), the Ninth Circuit held that "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury'" and "a plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers 'imminent injury.'"

The aforementioned cases demonstrate that a plaintiff pursuing injunctive relief under the RA does not have to demonstrate that they will inevitably return to the non-compliant location in the near future, nor identify the precise date upon which the future harm is expected to occur, if at all. Rather, a plaintiff need only show that they were harmed in the past by a violation of the RA at one of the defendant's facilities and that they plausibly intend to return to that facility or are deterred from returning because of the defendant's continued noncompliance.

Plaintiffs have met that standard here. They identified a member with a disability involving pregnancy complications,[4] Am. Compl. ¶¶ 43, 66, who was pregnant at the time of filing, *id.,* has been harmed by Defendants' RA violations

---

[4] The Sixth Circuit has explained an increased risk of miscarriage due to past pregnancy complications is a recognized disability under federal law. *Spees v. James Marine, Inc*., 617 F.3d 380, 396-97 (6th Cir. 2010).

9

in the past, lives in a place where the sole facility providing emergency pregnancy care is owned and operated by Defendants, *id.* ¶ 42, and feared being unable to access the services of Defendants' hospitals again because of a disability, *id.* ¶ 66. Requiring this disabled member to return to Defendants' facility and subject herself to further harm, despite knowledge that the non-compliant policy that harmed her in the past is still in effect, is directly contrary to *Gaylor* and the other decisions that have addressed this issue. Therefore, this court's failure to conduct this analysis in the case at bar is a palpable defect that warrants reconsideration.

## II. This Court Should Grant Plaintiffs Leave to Amend the Complaint if Reconsideration is Not Granted.

Federal Rule of Civil Procedure 15(a) provides that courts should "freely give leave to amend when justice so requires." Fed. R. Civ. P. 15(a)(2).

The "freely granted" provision in Rule 15(a) has been construed in this Circuit to mean that leave should be granted unless there is undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, or futility of amendment. *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). As demonstrated below, none of these factors are present in this case. Consequently, justice requires that this court "freely give" Plaintiffs leave to amend and file a Second Amended Complaint.

First, Plaintiffs have acted promptly by seeking leave to amend only

fourteen days after the Court entered its order dismissing the case and have informed Defendants of their intent to amend the Complaint.

Second, there is no bad faith underlying Plaintiffs' request for leave to amend. Plaintiffs seek only to supplement the complaint with more specific allegations of the risk of harm to Plaintiffs' members to cure any deficiencies identified in the Court's dismissal order. *See* Dist. Ct. Op., Dkt. # 44, at 11 ("[Plaintiffs] have plead no facts, nor brought any supplemental evidence to explain why this member in particular faces a substantial risk of having pregnancy complications. Given the events that must materialize, her risk of harm, as currently plead, cannot be characterized as 'certainly impending.'")

Next, given the early stage of the litigation, amendment of the complaint would not unduly prejudice Defendants, who have not had to expend significant resources in discovery or other matters to defend this case.

Finally, amendment would not be futile. As Plaintiffs cited above, the medical literature demonstrates that the risk of miscarriage for women with a history of miscarriage is high. *See* Am. Coll. of Obstetricians & Gynecologists, *Practice Bulletin: Early Pregnancy Loss*, http://www.acog.org/Resources-And-Publications/Practice-Bulletins/Committee-on-Practice-Bulletins-Gynecology/Early-Pregnancy-Loss. The relevant period for determining standing is when the original complaint was filed. *See Cleveland Branch, N.A.A.C.P. v.*

11

*City of Parma, OH*, 263 F.3d 513, 524 (6th Cir. 2001). Plaintiffs have identified a member who was pregnant at the time of filing, has had multiple miscarriages that required treatment and information prohibited by the policies at Defendants' hospitals, lives in a county where the sole hospital is owned and operated by Defendants, and who was at substantial risk of miscarrying again and being denied necessary emergency care. Thus, if the Court determines that the current allegations are insufficient to demonstrate standing under the standard outlined *supra* in Section I, the more detailed allegations summarized above will adequately demonstrate the imminent risk of harm faced by at least one of Plaintiffs' members from Defendants' policies.

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Reconsideration should be granted. In the alternative, Plaintiffs should be granted leave to amend their Complaint within twenty-one days.

Respectfully Submitted,

| | |
|---|---|
| /s/ Brooke A. Merriweather-Tucker | /s/ Alexa Kolbi-Molinas |
| Brooke A. Merriweather-Tucker (P79136) | Alexa Kolbi-Molinas |
| Daniel S. Korobkin (P72842) | Brigitte Amiri |
| Michael J. Steinberg (P43085) | Jennifer Dalven |
| Kary L. Moss (P49759) | Alyson Zureick |
| American Civil Liberties Union   Fund of Michigan | American Civil Liberties Union   Foundation |
| 2966 Woodward Ave. | 125 Broad St., 18th Floor |

12

| | |
|---|---|
| Detroit, MI 48201 <br> (313) 578-6823 <br> btucker@aclumich.org | New York, NY 10004 <br> (212) 549-2633 <br> akolbi-molinas@aclu.org |
| Jennifer B. Salvatore (P66640) <br> Cooperating Attorney, American Civil <br> Liberties Union Fund of Michigan <br> Salvatore Prescott, PLLC <br> 105 E. Main Street <br> Northville, MI 48167 <br> (248) 679-8711 <br> Salvatore@salvatoreprescott.com | *Attorneys for Plaintiff* <br> *American Civil Liberties Union* |

*Attorneys for Plaintiff*
*American Civil Liberties Union of Michigan*

Dated: April 25, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2016, I electronically filed the foregoing document with the Clerk of the Court via the ECF system which will give notification of same to all parties of record.

/s/ Brooke A. Merriweather-Tucker

Dated: April 25, 2016

13